OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 This appeal raises important questions of statutory interpretation, with potentially far-reaching consequences, regarding local government employers’ obligation to subsidize the health insurance
 
 *141
 
 premiums of their retirees who choose to participate in the State Public Employees’ Benefits Program (PEBP). Local government employees may elect to join PEBP upon retirement if the health benefits they obtained during employment fall within a statutorily described health care program.
 
 [1]
 
 If an employee who was covered by one of those statutory health care programs joins PEBP upon retirement, the former local government employer must, under a different statute, subsidize the retiree’s PEBP premiums.
 
 [2]
 

 Given these statutory provisions, the primary question raised here is whether local government employers must pay the subsidy for their retirees who joined PEBP, even though, before retirement, those local government employees’ health insurance benefits were provided through a collectively bargained-for health trust. To answer this question, we necessarily determine whether a collectively bargained-for health trust is one of the types of statutorily described health care programs that qualifies local government employees to enroll with PEBP in the first instance. If a collectively bargained-for health trust does constitute such a qualifying health care program, the second issue is whether the statutory subsidy for PEBP premiums applies to retirees who joined PEBP before the subsidy statute’s effective date.
 

 According to respondents, Las Vegas Metropolitan Police Department (Metro) and Clark County, they are not required to pay the statutory PEBP subsidy for two reasons. First, they note, the subsidy is required for only those employees who were covered by a statutorily described health care program and who then elected PEBP coverage when they retired. According to Metro and Clark County, since their employees were never covered by a statutorily described program, because the collectively bargained-for health trusts do not qualify as such programs, the employees are not eligible for the subsidy upon retirement. Taken to its logical conclusion, Metro’s and Clark County’s argument means that these employees were not eligible for PEBP coverage upon retirement in the first instance. Second, they assert, even if the health care programs at issue qualify their retirees for PEBP coverage, the statutory PEBP subsidy does not apply to employees who retired before the statute’s effective date, October 1, 2003, because applying the subsidy in that manner would constitute an impermissible “retroactive’ ’ application of the statute.
 

 The district court agreed with Metro’s and Clark County’s arguments and granted them declaratory relief. PEBP then filed the instant appeal, asserting that the district court erred with respect to both issues, since Metro’s and Clark County’s retirees were indeed
 
 *142
 
 covered by a statutorily described health care program and the subsidy requirement applies to employees who retired before October 2003.
 

 We conclude that the district court misinterpreted the subsidy requirement and, consequently, improperly granted declaratory relief to Metro and Clark County. Several statutes describe local government employer-sponsored health care programs, participation in which allows local government employees to join PEBP upon retirement and receive the statutory PEBP subsidy. One of those statutes, NRS 287.010(l)(a), governs systems of group health insurance. Because NRS 287.010(l)(a) could be read as narrowly applying only to local government employer-run health care, as the district court concluded, or as broadly applying to any type of local government employer action taken to provide its employees with health care coverage, the statute is ambiguous. Using well-established rules of statutory construction to interpret this ambiguous provision, we ultimately conclude that NRS 287.010(l)(a) must be read in its broad sense as generally granting to local governments authority to provide health insurance to their employees. Consequently, collectively bargained-for health trusts fall within that statute’s scope. Since such health trusts are statutorily authorized health insurance programs, local government retirees who were previously covered by health trusts and who elect PEBP coverage upon retirement are entitled to the statutory subsidy.
 

 Further, with respect to the second issue, pre-October 2003 retirees are entitled to the subsidy for three reasons: (1) applying the statute to those retirees simply is not “retroactive” treatment; (2) the legislative history indicates that the subsidy applies as of October 1, 2003, to current retirees; and (3) the Legislature has resolved any remaining doubt by clarifying its intent through a 2007 legislative amendment to NRS 287.023. Accordingly, we reverse the district court’s order.
 

 BACKGROUND
 

 NRS Chapter 287 governs public employee programs, including local government employer-sponsored heath care coverage. The Legislature first enabled local government employers to provide health care coverage to their employees in 1947, when it enacted NRS 287.010, which describes systems of group health insurance.
 
 [3]
 
 Over the years that followed, the Legislature further developed this area of Nevada law, amending NRS 287.010 to include additional features related to group health insurance coverage and adding provisions that contained descriptions of, and requirements regarding, certain other types of health care programs that local government employers may provide for their employees. Today,
 
 *143
 
 in addition to NRS 287.010’s coverage of group health insurance systems, three other statutes govern local government health care coverage, including collectively bargained-for health trusts,
 
 [4]
 
 systems of medical or hospital service through nonprofit membership corporations,
 
 [5]
 
 and participation in another entity’s health care program.
 
 [6]
 

 Meanwhile, in 1969, local government employers became subject to another set of statutory provisions: the Local Government Employee-Management Relations Act.
 
 [7]
 
 Under the Act, local government employers are required to negotiate with employee organizations over certain terms of employment. One of the employment terms subject to mandatory bargaining is insurance benefits.
 
 [8]
 

 Metro and Clark County collectively bargain for health trusts
 

 As a result of NRS Chapter 288 negotiations over insurance benefits, Metro and Clark County agreed to help fund heath and welfare trusts to cover their employees’ health care needs. Under these collectively bargained-for health trusts, which do not mention NRS Chapter 287, Metro and Clark County pay for (or a substantial amount towards) their employees’ health insurance premiums and medical benefits. The health trust’s trustees are selected from both labor and management, and the health trusts apparently qualify as voluntary employees’ beneficiary associations under federal law (I.R.C. § 501(c)(9)). The trust funds must be used for health and welfare benefit purposes, and the trustees possess the sole power to create, adopt, and manage employee health care plans.
 

 Metro’s and Clark County’s employees join PEBP upon retirement and, arguably, thereby become eligible for a statutory subsidy
 

 Under NRS 287.023(1), local government employees who were covered by one of the four types of health care programs described above may choose, upon retiring, either to continue with that program or to join the State’s Public Employees’ Benefits Program (PEBP).
 
 [9]
 
 Several Metro and Clark County employees chose to join PEBP when they retired.
 

 
 *144
 
 Until 2003, local government employees who joined PEBP for the first time upon retirement were wholly responsible for the coverage costs.
 
 [10]
 
 During the 2003 legislative session, however, several PEBP-participating local government retirees voiced concerns about large increases to the health insurance premiums that PEBP charged them.
 
 [11]
 
 As a result, the Legislature enacted legislation mandating that local government employers subsidize their PEBP-participating retirees’ premiums at the same rate as the State subsidizes its retirees’ premiums, starting on October 1, 2003.
 
 [12]
 
 The subsidy requirement was codified in NRS 287.023(4), which, at the time of its enactment, stated that local government employers must subsidize PEBP premiums “for persons who join the [PEBP] upon retirement pursuant to subsection l.”
 
 [13]
 
 As noted, subsection 1 (NRS 287.023(1)) allows employees to join the PEBP upon retirement if they (or their dependents) previously participated in one of the four NRS Chapter 287-described health care programs for local governments.
 
 [14]
 

 Metro refuses to pay the subsidy and institutes a district court action; Clark County intervenes
 

 When the subsidy legislation became effective on October 1, 2003, appellant PEBP began billing local government employers with PEBP-participating retirees, including Metro. Metro refused to pay the subsidy, and PEBP apparently referred Metro to collection, causing the state controller to offset Metro’s state funding to pay for PEBP’s claims.
 

 Metro then filed a district court action, requesting declaratory and injunctive relief. In its complaint, Metro asserted that its retirees did not fall under the subsidy provision’s purview for two reasons.
 

 
 *145
 
 First, it argued, they did not “join the [PEBP] upon retirement pursuant to subsection 1” because NRS 287.023(1) allowed only those employees who were previously covered by an NRS Chapter 287-described health care program to join the PEBP upon retirement, and none of Metro’s PEBP-participating retirees was previously covered by such a plan. Metro contended that since its retirees’ health care had been covered, preretirement, by a nonstatutory, collectively bargained-for health trust, not by one of the four types of statutorily enumerated health care programs, they had not joined the PEBP “under subsection 1,” and thus, Metro was not required to pay the subsidy.
 
 [15]
 

 Second, Metro argued that NRS 287.023(4)’s subsidy requirement did not “retroactively” apply to retirees who had joined the PEBP before the bill’s effective date, October 1, 2003. Although framed as a “retroactivity” argument, Metro was arguing that the subsidy should not apply to current PEBP members, as of its effective date. Metro requested that the district court grant it declaratory relief.
 

 Thereafter, Clark County was allowed to intervene and filed a complaint for declaratory relief, contending, for the same reasons as Metro, that it was not required under NRS 287.023(4) to subsidize its retired firefighters’ and other retirees’ PEBP premiums.
 
 [16]
 
 PEBP filed answers, and all parties moved for summary judgment.
 

 The district court grants Metro and Clark County declaratory relief
 

 Upon hearing the summary judgment motions, the district court granted declaratory relief in Metro’s and Clark County’s favor. In its decision, the court determined, as the local government employers had argued, that because Metro’s retirees and Clark County’s firefighter retirees were previously covered by collectively bargained-for health trusts, and the health trusts were not described in one of the applicable four NRS Chapter 287 provisions, the retirees were not eligible to receive the NRS 287.023 subsidy because they had not joined the PEBP “under subsection 1.”
 

 
 *146
 
 More specifically, the court found that, while the health trusts were similar to the type of health care program described in NRS 287.015, that statute was inapplicable in this instance because it did not apply to any trust established before July 1, 2003, and the Metro and Clark County health trusts were established before that date. Further, although PEBP had argued that the health trusts necessarily were the type of program described in NRS 287.010(1), which provides that local governments may “[a]dopt and carry into effect a system of group . . . health insurance,” the court apparently concluded that Metro and Clark County had not “adopted and carried into effect” their health trusts; instead, it noted that their health trusts were the result of NRS Chapter 288-governed collective bargaining. With respect to the other two types of statutorily authorized programs, the court correctly noted, and the parties agree, that they are not relevant here.
 
 [17]
 

 Regarding Metro’s and Clark County’s second argument, the district court concluded that they were not required to pay subsidies for employees who had retired before the bill’s effective date, October 1, 2003. In so deciding, the court determined that nothing in the 2003 version of NRS 287.023(4) demonstrated that the Legislature had intended for the subsidy requirement to apply “retroactively.” Although the court recognized that the Legislature had amended the statute in 2007, it concluded that the amendments did not relevantly alter pertinent language prospectively applying the subsidy requirement. Thus, the court ruled that, even though the subsidy statute took effect on October 1, 2003, and no one was seeking subsidy benefits before that date, the subsidy did not apply to any retirees in the PEBP system before October 1, 2003. PEBP has appealed.
 

 DISCUSSION
 

 When legal, not factual, issues are at play, this court reviews de novo a district court order resolving a request for declaratory relief.
 
 [18]
 
 Thus, here, as the parties primarily raise legal questions of statutory interpretation, we will conduct a plenary review.
 
 [19]
 

 
 *147
 
 It is well established that, when interpreting a statute, the language of the statute should be given its plain meaning unless doing so violates the act’s spirit.
 
 [20]
 
 Thus, when a statute is facially clear, we will generally not go beyond its language in determining the Legislature’s intent.
 
 [21]
 
 When a statute is ambiguous, meaning it “is capable of being understood in two or more senses by reasonably informed persons,” or when it does not address the issue at hand, however, we may look to reason and public policy to determine what the Legislature intended.
 
 [22]
 
 The import of the statutory language used may be ascertained by examining the background and spirit in which the law was enacted, and the entire subject matter and policy guides our interpretation.
 
 [23]
 
 Finally, we consider multiple legislative provisions as a whole,
 
 [24]
 
 construing a statute so that no part is rendered meaningless.
 
 [25]
 
 Because the statute that we are ultimately concerned with here, NRS 287.010, is ambiguous, we turn to the statute’s historical background and spirit, reason, and public policy to guide us in our interpretation.
 

 The subsidy is required for any PEBP-participating employee who was previously covered by an NRS Chapter 287-described health care program
 

 As briefly described above, under NRS 287.023(4), local government employers must subsidize the PEBP premiums of retirees who previously participated in one of the four types of health care programs described in NRS Chapter 287.
 
 [26]
 
 One of those four health care programs, described in NRS 287.010, governs systems of
 
 *148
 
 group health insurance. Although another provision, NRS 287.015, describes health care trust funds, that statute does not encompass health trusts established before July 1, 2003,
 
 [27]
 
 and no party argues that Metro’s and Clark County’s health trusts arose from NRS 287.015 authority.
 
 [28]
 
 Additionally, as noted above, all parties agree that the other two types of health care programs are not applicable here.
 

 Thus, the only NRS Chapter 287-authorized program at issue here is that described in NRS 287.010 — the so-called “010” program. As a result, the parties’ arguments focus on whether Metro’s and Clark County’s collectively bargained-for health trusts are properly considered “010” programs.
 
 [29]
 
 In arguing that they are, PEBP contends that the health trusts must be authorized under NRS 287.010(l)(a), or else they are ultra vires. Metro and Clark County, on the other hand, contend that the health trusts are not “010” programs, but instead were implicitly authorized under NRS Chapter 288’s collective bargaining requirements. As explained below, we agree with PEBP that the health trusts are, as a matter of law, “010” programs; as a result, to the extent that the parties’ other arguments are not related to the “010” program, we do not discuss them in this opinion.
 

 The health trusts are “010” programs
 

 Under an “010” program, a local government employer may provide health care coverage to its employees by generally establishing a group health insurance system, under which it may purchase group health insurance policies and/or implement a self-insurance reserve fund. Most important to the parties’ arguments
 
 *149
 
 here is the first option, NRS 287.010(l)(a), the general provision allowing local government employers to “adopt and carry into effect’ ’ a group health insurance system:
 

 The governing body of any county, school district, municipal corporation, political subdivision, public corporation or other local governmental agency of the State of Nevada may:
 

 (a) Adopt and carry into effect a system of group life, accident or health insurance, or any combination thereof, for the benefit of its officers and employees, and the dependents of officers and employees who elect to accept the insurance and who, where necessary, have authorized the governing body to make deductions from their compensation for the payment of premiums on the insurance.
 

 Thus, NRS 287.010(l)(a) permits local government employers to provide health care coverage to their employees by “adopting] and carrying] into effect” a group health insurance “system.” Although none of these terms is statutorily defined, other authorities recognize that “insurance” is difficult to describe but “is generally understood to be an arrangement for transferring and distributing risks.”
 
 [30]
 
 Clearly, many ways of transferring and distributing group health risks do not necessarily involve traditional direct contracting with an outside insurer, such as retaining risks by “self-insuring.” Thus, whether a local government employer has “adopted and carried into effect” a group health insurance “system” under NRS 287.010(l)(a) could be read as broadly applying to any action a local government employer takes to ensure health care coverage for its employees, like PEBP suggests, or as narrowly applying to only those health plans established and effected solely by the local government employer, as Metro suggests.
 
 [31]
 
 As a result, this statute is ambiguous.
 

 For example, PEBP asserts that Metro and Clark County adopted and put into effect group health insurance systems when
 
 *150
 
 they agreed to contribute to the collectively bargained-for health trusts and to deduct any remaining amounts owed from pertinent employee salaries. PEBP also asserts that Metro carries the system into effect because three of its management members serve on the health trust’s board of trustees.
 
 [32]
 

 In contrast, Metro asserts that its health trust is carried into effect solely by its board of trustees, and Metro points out that, even though its members serve on the board, they must uphold their fiduciary duties to the trust beneficiaries. According to Metro, it has no direct authority to operate the trust and thus did not “carry into effect” any health insurance system.
 
 [33]
 
 Metro also argues that the health trust is not “insurance,” as is meant by NRS 287.010(1)’s “system of insurance” language, as it is explicitly excluded from Nevada’s Insurance Code by NRS 679A. 160(7).
 
 [34]
 

 
 *151
 
 Exclusion from Nevada’s Insurance Code, however, does not mean that the health trusts are not “insurance” as is contemplated by NRS 287.010, especially since health trusts are only partially excluded from the Insurance Commissioner’s review. Nevertheless, whether the health trusts fall within NRS 287.010(l)(a)’s description of “ adopting] and carry[ing] into effect” a system of group health insurance depends on how broadly that ambiguous language was intended to apply. Since that statute was enacted in 1947, no legislative minutes are available. Accordingly, we look to reason and public policy, as well as the legislation’s purpose, to determine the Legislature’s intent.
 
 [35]
 

 When first enacted in 1947, NRS 287.010 read as follows: “[local governments] shall have the jurisdiction and power to adopt and carry into effect a system of group life, accident and/or health insurance. . . . The jurisdiction hereby conferred shall include the power ... to purchase group [insurance] policies.” Although this statute was later amended and divided into subsections, with (a) describing local government employers’ power to “adopt and carry into effect” group health insurance and (b) providing authority to purchase group insurance policies, the statute’s original language indicates that (a) is a general provision, which was then exemplified or supplemented by the specific authority contained in subsection (b). Later, the general power set forth in NRS 287.010(l)(a) was again illustrated and enhanced with subsections (c) and (d), which provide, respectively, that group health coverage may be provided through a self-insurance reserve fund and that the local government employers may defray the costs of the self-insurance reserve fund or the insurance premiums.
 
 [36]
 

 Further, local governments were authorized to provide insurance through the adopted and carried-out system only to employees who “elect[ed] to accept the same and who [had] authorized the governing body to make deductions from their compensation for the payment of premiums on such insurance,” which suggests that the local governments had no authority to themselves pay for their employees’ health insurance, at least until subsection (d) was enacted in I960.
 
 [37]
 
 Consequently, it appears that NRS 287.010(l)(a) was intended to generally authorize local government employers to provide, for their employees’ purchase, some general form of group health insurance.
 

 Therefore, while Metro’s argument that it does not itself “carry into effect’ ’ any system of health insurance is not without merit,
 
 *152
 
 we conclude that NRS 287.010(l)(a) should be interpreted as more broadly applying to any type of employer-sponsored health insurance.
 
 [38]
 
 Thus, regardless of who serves as trustee, by agreeing to and ensuring that their employees have health care coverage options under the collective bargaining agreements, Metro and Clark County have, as a matter of law, “adopted and carried into effect” group health insurance systems for the purposes of NRS 287.010(l)(a). As a result, the health trusts fall within the scope of NRS 287.010(l)(a), and the Metro and Clark County retirees who were previously covered by a collectively bargained-for health trust were entitled to join PEBP upon retirement as set forth in NRS 287.023(1).
 

 Because the health trusts are “010” programs, Metro and Clark County employees who were covered by health trusts and who participate in PEBP upon retirement are entitled to the NRS 287.023(4) subsidy
 

 Because the employees who joined PEBP when they retired did so under NRS 287.023(1), they are entitled to the NRS 287.023(4) subsidy. NRS 287.023(4) provides that local government employers must subsidize the premiums of any employee who joins the PEBP under NRS 287.023(1). The 2003 version of NRS 287.023(4) stated as follows:
 

 The governing body of any county, school district, municipal corporation, political subdivision, public corporation or other local governmental agency of this state:
 

 (b) Shall pay the same portion of the cost of coverage under the Public Employees’ Benefits Program for persons who join
 
 *153
 
 the [PEBP] upon retirement pursuant to subsection 1 as the State pays pursuant to subsection 2 of NRS 287.046 for persons retired from state service who have continued to participate in the Program.
 
 [39]
 

 Accordingly, Metro and Clark County retirees who were previously covered by a collectively bargained-for health trust and who chose to join PEBP upon retirement are entitled to the NRS 287.023(4) subsidy.
 
 [40]
 
 This conclusion brings us to the next issue — whether, even if the subsidy applies to employees who were previously covered by a collectively bargained-for health trust, those employees who joined PEBP before the statute’s October 1, 2003, effective date are eligible for the subsidy.
 

 NRS 287.023(4) ’s subsidy requirement applies to retirees who joined PEBP before October 1, 2003
 

 Metro and Clark County assert that NRS 287.023(4)’s subsidy requirement does not apply to employees who retired before the
 
 *154
 
 statute’s October 1, 2003, effective date because the Legislature did not specify that the subsidy applied “retroactively.” PEBP argues, however, that this conclusion misconstrues NRS 287.023(4) and misapplies the term “retroactive.” In these respects, PEBP is correct.
 

 When NRS 287.023(4) was enacted in 2003, it provided that local government employers must subsidize the PEBP premiums “for persons who join the [PEBP] upon retirement.” Because the 2003 version of the statute applied only to those employees who “join” (not “joined”) PEBP upon retirement, Metro and Clark County argue that PEBP’s attempt to collect subsidies for local government employees who retired and “joined” PEBP before the statute’s effective date constitutes an improper retroactive application of the subsidy requirement. Grammatically, however, the Legislature’s use of the present tense is neutral and expresses no intent to prevent employees who retired before October 1, 2003, from receiving the subsidy after that date. Moreover, applying the statute as of October 2003 to those local government employees who retired and elected PEBP benefits would, as discussed below, not normally be considered a “retroactive” application.
 

 Requiring local government employers to subsidize employees who retired before October 2003 is not “retroactively” applying the subsidy requirement
 

 Even though PEBP expects local government employers to subsidize, as of October 1, 2003, the premiums of employees who had retired before that date, it is not applying the statute retroactively because it is not charging the employers any amounts related to pre-October 2003 premiums. Instead, it is prospectively applying the statute by requiring local government employers to subsidize only premiums that were due for coverage on or after October 1, 2003.
 

 In Nevada, as in other jurisdictions, statutes operate prospectively, unless the Legislature clearly manifests an intent to apply the statute retroactively, or “it clearly, strongly, and imperatively appears from the act itself” that the Legislature’s intent cannot be implemented in any other fashion.
 
 [41]
 
 And as Metro points out,
 
 *155
 
 when the Legislature intends retroactive application, it is capable of stating so clearly.
 
 [42]
 

 But whether requiring local government employers to subsidize, as of October 2003, the premiums of employees who joined PEBP before that date is truly a retroactive application of the statute is a separate question. Generally, as recognized by the U.S. Supreme Court, courts must take a “commonsense, functional” approach in determining if a new statute operates retroactively because it imposes new legal consequences on events completed before its enactment.
 
 [43]
 
 But just because a statute draws upon past facts does not mean that it operates “retrospectively.”
 
 [44]
 
 Instead, “[a] statute has retroactive effect when it ‘takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions or considerations already past.’ ’ ’
 
 [45]
 
 That is, even though a statute operates only from the time of its enactment, it is retroactive if it impairs “ ‘vested rights and past transactions.’ ”
 
 [46]
 
 In deciding whether a statute has retroactive application, courts are guided by fundamental notions of “fair notice, reasonable reliance, and settled expectations.’ ’
 
 [47]
 

 Here, local government employers can claim no statutory right to refrain from paying a subsidy to their retirees; thus, the subsidy re
 
 *156
 
 quirement neither takes away nor impairs any vested legal right. Further, while the subsidy creates a new obligation for local government employers, that new obligation is not imposed on past transactions — instead, the obligation is imposed to pay a subsidy on premiums due for coverage after the law became effective on October 1, 2003. Therefore, even though the subsidy requirement may have drawn upon past facts for its operation, and even though it may have unsettled expectations that Metro and Clark County relied on in negotiating collective bargaining agreements, the subsidy was not “retroactively” imposed.
 
 [48]
 

 The Legislature did not intend to exempt pre-October 2003 retirees from the subsidy requirement
 

 Finally, lest any doubt remain with respect to NRS 287.023(4)’s application to pre-October 2003 retirees, two additional sources reflect that the Legislature intended to include them: the statute’s history and a 2007 amendment. With respect to legislative history, as noted above, the subsidy requirement was unequivocally enacted in response to voiced concerns with the rapidly rising costs of retiree PEBP premiums.
 
 [49]
 
 Thus, denying pre-October 2003 retirees the subsidy would not affect the very persons the bill was enacted to assist, and consequently, it appears from the act itself that the legislative intent could not be effected if the subsidy were applied only to those local government employees who retired on or after October 1, 2003.
 

 Regarding the 2007 amendment to NRS 287.023(4), when the Legislature substantially amends a statute, it is ordinarily pre
 
 *157
 
 sumed that the Legislature intended to change the law.
 
 [50]
 
 Nevertheless, that presumption may be rebutted by the circumstances surrounding the amendment.
 
 [51]
 
 For instance, when a statute’s “ ‘doubtful interpretation’ ” is made clear through subsequent legislation, we may consider the subsequent legislation persuasive evidence of what the Legislature originally intended.
 
 [52]
 

 Here, NRS 287.023(4) was amended in 2007 to omit the controversial “join” language.
 
 [53]
 
 As amended, the statute now requires local government employers to subsidize the PEBP premiums “for retired persons who
 
 participate in
 
 the [PEBP]” (emphasis added).
 
 [54]
 
 Apparently, the 2007 Legislature was aware of Metro’s and Clark County’s interpretation of the statute;
 
 [55]
 
 thus, it appears that, as a result of that “doubtful interpretation,” the Legislature has clarified the statute to specify its intent that the subsidy requirement apply to any local government retirees participating in PEBP on NRS 287.023(4)’s effective date, October 1, 2003.
 
 *158
 
 Moreover, this amendment was passed after a legislative committee heard testimony from a Metro representative that the amendment would require Metro to pay the subsidy for retirees covered under its collective bargaining agreement and asking that the “join” language not be changed.
 
 [56]
 
 And the Legislature expressly made the “participate in” language retroactive to October 1, 2003.
 
 [57]
 
 Therefore, in amending NRS 287.023(4), the Legislature meant to clarify its original intent to apply the subsidy requirement to local government retirees who joined PEBP before October 1, 2003.
 

 For the above reasons, NRS 287.023(4)’s subsidy requirement applies to pre-October 2003 retirees.
 

 CONCLUSION
 

 Because the Metro and Clark County collectively bargained-for health trusts at issue here are “010” programs, PEBPparticipating local government retirees who were previously covered by the health trusts are entitled to the NRS 287.023(4) subsidy. Further, pre-October 2003 retirees are entitled to the subsidy, because (1) applying the statute to those retirees is not a “retroactive” application, (2) the legislative history indicates that the subsidy applies, as of October 1, 2003, to current retirees, and (3) the Legislature has clarified any doubt as to its intent that the subsidy apply to current retirees through a 2007 legislative amendment to NRS 287.023. Accordingly, we reverse the district court’s order granting declaratory relief to the local government employers.
 

 Gibbons, C. J., Maupin, Parraguirre, Douglas, Cherry and Saitta, JJ., concur.
 

 [1]
 

 NRS 287.023(1).
 

 [2]
 

 NRS 287.023(4).
 

 [3]
 

 1947 Nev. Stat., ch. 27, at 31-32.
 

 [4]
 

 NRS 287.015.
 

 [5]
 

 NRS 287.020.
 

 [6]
 

 NRS 287.025.
 

 [7]
 

 NRS 288.010; 1969 Nev. Stat., ch. 650, at 1376-83.
 

 [8]
 

 NRS 288.150(2)(f);
 
 see
 
 1975 Nev. Stat., ch. 539, § 15, at 920.
 

 [9]
 

 See
 
 NRS 287.023(1) (noting that employees may join the program upon retirement if either they or their dependents were covered by an NRS Chapter 287-described program and that the employees’ option to join PEBP is valid only to the extent that Medicare is not provided under the Health Insurance for the Aged Act, 42 U.S.C. § 1395
 
 et seq.).
 

 
 *144
 
 Starting November 30, 2008, local government employees will no longer have the option to join PEBP upon retirement, unless they participated in PEBP before retirement — that is, they may only continue PEBP coverage.
 
 See
 
 2007 Nev. Stat., ch. 496, § 2.5, at 2870 (eliminating the right to enroll in PEBP for the first time for local government employees who retire on or after November 30, 2008).
 

 [10]
 

 2003 Nev. Stat., ch. 493, § 1, at 3250-51. Although local government employers apparently were not prohibited from contributing to retiree health care costs, neither were they required to contribute to those costs.
 
 Id.; see also
 
 Hearing on A.B. 286, Before the Assembly Ways and Means Comm., 72d Leg. (Nev., April 7, 2003) (noting that certain local government employers contributed to their retirees’ health care costs, in varying amounts).
 

 [11]
 

 See
 
 A.B. 286, Bill Summary, 72d Leg. (Nev. 2003); Hearing on A.B. 286, Before the Assembly Government Affairs Comm., 72d Leg. (Nev., March 19, 2003) (recording the testimony of several former local government employees).
 

 [12]
 

 2003 Nev. Stat., ch. 493, §§ 1, 10, at 3250-51, 3257.
 

 [13]
 

 Id.
 
 § 1, at 3250-51; NRS 287.023(4)(b) (2003). NRS 287.023(4) was twice amended in 2007; pertinent amendments are discussed later.
 

 [14]
 

 See
 
 NRS 287.010; NRS 287.015; NRS 287.020; NRS 287.025.
 

 [15]
 

 “Interestingly, since under NRS 287.023(1), only those local government employees who were covered by one of the four statutorily described health care programs were entitled to elect PEBP coverage, Metro’s first argument creates an additional issue — whether its retirees should have been covered by PEBP in the first place, or instead, whether their only effective option was to continue with the collectively bargained-for coverage. Although Metro asserts that retiree participation in PEBP is not controlled by NRS 287.023(1), but instead by a more general statute, we need not reach this consequential issue, given our conclusion that collectively bargained-for health trusts are health care programs described under NRS Chapter 287.
 

 [16]
 

 Apparently, Clark County’s firefighter retirees were previously covered by a collectively bargained-for health trust much like Metro’s health trust; its arguments with respect to its other retirees focused solely on the “retroactive” application issue.
 

 [17]
 

 See
 
 NRS 287.020 (governing local government establishment of systems of medical and/or hospital service provided through nonprofit membership corporations that defray costs); NRS 287.025(l)(b), (c), and (d) (allowing local governments to secure group insurance by contracting with other local governments or by participating in a nonprofit cooperative association or corporation).
 

 [18]
 

 Nevadans for Nevada
 
 v.
 
 Beers,
 
 122 Nev. 930, 942, 142 P.3d 339, 347 (2006) (citing
 
 County of Clark v. Upchurch,
 
 114 Nev. 749, 961 P.2d 754 (1998) (providing that, when a district court’s decision in a declaratory relief action is based on statutory construction, this court conducts de novo review)).
 

 [19]
 

 Id.
 

 [20]
 

 McKay
 
 v.
 
 Bd. of Supervisors,
 
 102 Nev. 644, 648, 730 P.2d 438, 441 (1986).
 

 [21]
 

 Id.
 

 [22]
 

 Id.
 
 at 649, 730 P.2d at 442;
 
 Executive Mgmt. v. Ticor Title Ins. Co.,
 
 118 Nev. 46, 51, 38 P.3d 872, 875 (2002).
 

 [23]
 

 McKay,
 
 102 Nev. at 650-51, 730 P.2d at 443.
 

 [24]
 

 Diamond
 
 v.
 
 Swick,
 
 117 Nev. 671, 676, 28 P.3d 1087, 1090 (2001).
 

 [25]
 

 Harris Assocs. v. Clark County Sch. Dist.,
 
 119 Nev. 638, 642, 81 P.3d 532, 534 (2003).
 

 [26]
 

 See also
 
 NRS 287.023(1). In 2003, NRS 287.023(1) provided the following:
 

 Whenever an officer or employee of the governing body of any . . . local governmental agency of the State of Nevada retires . . . and, at the time of his retirement, was covered or had his dependents covered by any group insurance, plan of benefits or medical and hospital service established pursuant to NRS 287.010, 287.015, 287.020 or [certain subsections of] 287.025, the officer or employee has the option upon retirement to cancel or continue any such coverage or join the Public Employees’ Benefits Program to the extent that such coverage is not provided to him or a dependent by [Medicare].
 

 
 *148
 
 Although NRS 287.023(1) was amended in 2007, those amendments have no bearing on the resolution of this appeal.
 
 See
 
 2007 Nev. Stat., ch. 496, § 2, at 2869 (adding language regarding preretirement PEBP coverage), and § 2.5 at 2870 (eliminating the option to join PEBP upon retirement).
 

 [27]
 

 2003 Nev. Stat., ch. 448, § 2, at 2737 (setting forth the provisions in NRS 287.015), and § 11, at 2742 (stating that “[sjections 1 to 10, inclusive, of this act do not apply to any trust established before July 1, 2003”).
 

 [28]
 

 NRS 287.015 imposes requirements on collectively bargained-for health trusts that are very similar to the requirements imposed on similar trusts under federal law.
 
 See
 
 29 U.S.C. § 186(c)(5) (2000). Indeed, the statute is expressly based on federal law.
 
 See
 
 Hearing on A.B. 388 Before the Assembly Government Affairs Comm., 72d Leg. (Nev., March 27, 2003).
 

 [29]
 

 Although various parties and amici curiae suggest that NRS 287.023(4)’s subsidy requirement must be liberally construed to effectuate the Legislature’s intent, no one has suggested any alternative interpretation that does not depend upon NRS 287.023(1)’s eligibility prerequisite, requiring that employees be covered, preretirement, by an NRS Chapter 287-described program, before they become eligible for the subsidy.
 

 [30]
 

 Robert E. Keeton & Alan I. Widiss,
 
 Insurance Law
 
 3 (1988).
 

 [31]
 

 “Adopt” is defined most relevantly as “to accept formally and put into effect.”
 
 Merriam-Webster’s Collegiate Dictionary
 
 16 (10th ed. 1997). “Carry into effect” seems synonymous to “effectuate,” which is defined as “to cause to come into being,” “to bring about,” or “to put into operation.”
 
 Id.
 
 at 368 (referring to “effect 2” at 367). “System” is defined as “a regularly interacting or interdependent group . . . forming a unified whole, as: ... a group of devices or artificial objects or an organization forming a network especially] for distributing something or serving a common purpose.”
 
 Id.
 
 at 1197. Thus, NRS 287.010 could be read as broadly applying to any arrangement for transferring health risks that the local government employer formally accepts and in some manner brings about, or as more specifically applying to a network for transferring health risks that the local government employer itself implements and operates.
 

 [32]
 

 As Metro points out, PEBP apparently never made these fact-based arguments below, but instead, PEBP argued only that the health trust
 
 must
 
 be an NRS 287.010 plan because, before 2003, no other authority for the trust existed. Metro asserts that PEBP thus waived these arguments by not raising them below.
 
 See Dermody v. City of Reno,
 
 113 Nev. 207, 210-11, 931 P.2d 1354, 1357 (1997) (providing that parties may not raise a new argument for the first time on appeal). As PEBP notes, however, because the manner in which the health trust operates is not disputed, whether Metro has “adopted and carried out’ ’ a health insurance system is a question of law that was not necessarily waived by failing to argue it below.
 

 [33]
 

 See,
 
 e.g., Peick v. Pension Ben. Guaranty Corp.,
 
 539 F. Supp. 1025, 1047 (N.D. Ill. 1982) (noting that, under federal law, even management-selected health fund trustees owe their allegiances solely to the employees);
 
 cf. Waggoner v. Dallaire, 649
 
 F.2d 1362, 1368 (9th Cir. 1981) (recognizing that, under federal law, collectively bargained-for health trusts are legal entities separate and apart from unions).
 

 Metro notes that the health trusts are based on the federal Taft-Hartley Act (29 U.S.C. § 186(c)(5)(2000)), under which the independence of such plans insulates from employer overreaching and union corruption. Hearing on A.B. 388 Before the Assembly Government Affairs Comm., 72d Leg. (Nev., March 27, 2003) (indicating that a voluntary employees’ beneficiary association, like Metro’s trust, must be independent of the entity that creates it for federal tax purposes),
 
 supra
 
 n. 28 (explaining that NRS 287.015 is based on federal law). It also claims that many public employees participate in federally regulated ERISA plans provided by the Teamsters Union, arguing that those plans are not converted into NRS 287.010 programs thereby. As those plans are not before us, we make no comment on their relationship to NRS 287.010.
 

 [34]
 

 NRS 679A. 160(7) provides that “[hjealth and welfare plans arising out of collective bargaining under [NRS Chapter 288]” are excluded from NRS Chapter 679’s purview, “except that the Commissioner may review the plan to ensure that the benefits are reasonable in relation to the premiums and that the fund is financially sound.” Metro asserts that this provision also shows that the Legislature was aware of such collectively bargained-for health trusts authorized under NRS Chapter 288 and that its decision not to regulate them as other types of insurance is consistent with their exclusion from NRS 287.010’s scope.
 

 [35]
 

 McKay
 
 v.
 
 Bd. of Supervisors,
 
 102 Nev. 644, 648-49, 730 P.2d 438, 441-42 (1986).
 

 [36]
 

 1960 Nev. Stat., ch. 73, § 1, at 76; 1977 Nev. Stat., ch. 208, § 2, at 389.
 

 [37]
 

 1977 Nev. Stat., ch. 208, § 2, at 389; 1960 Nev. Stat., ch. 73, § 1, at 76.
 

 [38]
 

 Metro argues that, by enacting NRS 287.015, which authorizes and imposes certain requirements on health trusts established after July 1, 2003, the Legislature recognized that collectively bargained-for health trusts are not “010” programs, because if such trusts were “010” programs, they already would be regulated under NRS 287.010 and no need would exist for NRS 287.015.
 
 See Coast Hotels v. State, Labor Comm’n,
 
 117 Nev. 835, 841, 34 P.3d 546, 550 (2001) (noting that statutory interpretation should render no part of a statute meaningless);
 
 see also
 
 Hearing on A.B. 388 Before the Assembly Government Affairs Comm., 72d Leg. (Nev., March 27, 2003) (recording outside testimony that no other provision appeared to expressly provide for health trusts).
 

 But, like it did in supplementing NRS 287.010(l)(a) with more specific provisions, the Legislature apparently enacted NRS 287.015 to more specifically impose special requirements on collectively bargained-for trusts, since NRS 287.010(l)(a) does not contain such requirements and such requirements would not be applicable to other types of “010” programs. Moreover, NRS 287.015 was intended also to allow local government entities to unite for health benefits purposes so as to create an amalgamated rating group to help keep costs down. Hearing on A.B. 388 Before the Assembly Government Affairs
 
 *153
 
 Comm., 72d Leg. (Nev., March 27, 2003) (recording the legislation sponsor’s comments). Thus, NRS 287.015 is not rendered meaningless by our interpretation of NRS 287.010 as authorizing local government employer negotiated health trusts.
 

 [39]
 

 NRS 287.023(4) was amended in 2007 to require local government employers to pay subsidies for retirees who “participate in” PEBP or who reinstate PEBP coverage after retiring under specified statutes.
 
 See
 
 2007 Nev. Stat., ch. 520, § 10.3, at 3143-44. Although this amendment is not pertinent to resolving this issue, it is discussed below with respect to the second issue raised in this appeal — whether the subsidy applies to retirees who joined PEBP before October 1, 2003.
 

 [40]
 

 In light of this conclusion, we need not address PEBP’s argument that local government employers have no authority outside of NRS 287.010 to secure health insurance benefits for their employees. With respect to Metro’s and Clark County’s counterargument that their authority to secure such benefits stems from NRS Chapter 288, however, we point out that complying with NRS Chapter 288’s collective bargaining requirements does not prevent local government employers from also complying with NRS Chapter 287. NRS Chapter 288 nowhere informs employers whether they can or cannot create specified types of health coverage, and its requirement to negotiate over insurance does not authorize any type of insurance that might be agreed upon during the collective bargaining process. Moreover, to the extent that the chapters conflict, they should be harmonized in a manner that would give effect to both chapter’s purposes.
 
 See generally Bowyer
 
 v.
 
 Taack,
 
 107 Nev. 625, 627, 817 P.2d 1176, 1177 (1991),
 
 overruled on other grounds by McCrary v. Bianco,
 
 122 Nev. 102, 131 P.3d 573 (2006). Accordingly, Metro’s and Clark County’s compliance with NRS Chapter 288, alone, did not result in authorization to secure health benefits outside of NRS Chapter 287.
 

 Further, although the parties have made compelling opposing policy-based arguments, those policy-based arguments pertain solely to whether the subsidy should apply to retirees who were previously covered by a collectively bargained-for health trust, not to whether the health trusts are “010” plans,
 
 *154
 
 and therefore, we do not further discuss them. Nonetheless, we note that both the Legislative Counsel Bureau (LCB) and the Attorney General have opined that the subsidy requirement applies to retirees previously covered under collectively bargained-for health trusts.
 
 See
 
 LCB letter to Assemblywoman Chris Giunchigliani describing the Clark County School District health trust (November 24, 2003); 04-01 Op. Att’y Gen. 88 (2004).
 

 [41]
 

 Matter of Estate of Thomas,
 
 116 Nev. 492, 495-96, 998 P.2d 560, 562 (2000);
 
 accord Madera
 
 v.
 
 SIIS,
 
 114 Nev. 253, 257, 956 P.2d 117, 120 (1998);
 
 McKellar v. McKellar,
 
 110 Nev. 200, 203, 871 P.2d 296, 298 (1994).
 

 [42]
 

 For example, Metro notes, when the Legislature enacted NRS 287.0475 (allowing certain retirees to enroll in PEBP), it stated, “[t]he provisions of section 2 of this act apply to a public employee who
 
 has retired or retires . . .
 
 before, on or after July 1, 1987.” 1987 Nev. Stat., ch. 221, § 5, at 505 (emphasis added). Because neither NRS 287.023(4) nor its enacting legislation contain similar language, Metro argues, the subsidy requirement must be applied prospectively only.
 

 [43]
 

 INS
 
 v.
 
 St. Cyr,
 
 533 U.S. 289, 321 (2001).
 

 [44]
 

 Landgraf v. USI Film Products,
 
 511 U.S. 244, 269 (1994);
 
 see also id.
 
 at 269 n.24 (“Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law’s enactment or spent his life learning to count cards. Moreover, a statute is not made retroactive merely because it draws upon antecedent facts for its operation.” (internal quotations and citations omitted)).
 

 [45]
 

 St. Cyr,
 
 533 U.S. at 321 (quoting
 
 Landgraf,
 
 511 U.S. at 269).
 

 [46]
 

 Landgraf,
 
 511 U.S. at 268-69 (quoting
 
 Society for Propagation of the Gospel,
 
 22 F. Cas. 756, 767 (D. N.H. 1814) (No. 13,156)).
 

 [47]
 

 St. Cyr,
 
 533 U.S. at 321 (internal quotations and citations omitted);
 
 see also Landgraf,
 
 511 U.S. at 269 n.23 (citing
 
 Miller
 
 v.
 
 Florida,
 
 482 U.S. 423, 430 (1987) (“A law is retrospective if it ‘changes the legal consequences of acts completed before its effective date.’” (quoting
 
 Weaver v. Graham,
 
 450 U.S. 24, 31 (1981))).
 

 [48]
 

 See supra
 
 note 44;
 
 see also Landgraf
 
 511 U.S. at 269-70 (suggesting that courts are more concerned with the retroactive effects of statutes burdening
 
 private
 
 rights than with those burdening public rights).
 

 [49]
 

 Hearing on A.B. 286 Before the Assembly Government Affairs Comm., 72d Leg. (Nev., March 19, 2003) (reflecting the sponsor’s comments explaining that if current PEBP-participating retirees did not take advantage of a one-time opportunity provided in the bill to return to their former local government employer’s health plan, but instead chose to remain with the PEBP, then the employer would owe the subsidy); Hearing on A.B. 286 Before the Assembly Ways and Means Comm., 72d Leg. (Nev., April 7, 2003) (noting a legislative member’s comments that on the bill’s effective date, the local government employers would have to “start subsidizing their participants”); Hearing on A.B. 286 Before the Assembly Ways and Means Comm., 72d Leg. (Nev., May 12, 2003) (providing that a committee member stated that “[i]t was vital that the local governments participate even with the current retirees in the program because this program could not be subsidized for the next two years without some assistance”). The pertinent language applying the subsidy to persons who “join” PEBP upon retirement was not changed throughout these discussions.
 

 [50]
 

 Metz
 
 v.
 
 Metz,
 
 120 Nev. 786, 792, 101 P.3d 779, 783-84 (2004);
 
 McKay
 
 v.
 
 Bd. of Supervisors,
 
 102 Nev. 644, 650, 730 P.2d 438, 442 (1986).
 

 [51]
 

 Norman J. Singer, 2B
 
 Sutherland Statutory Construction
 
 § 49:11 (6th ed. 2000).
 

 [52]
 

 Matter of Estate of Thomas,
 
 116 Nev. 492, 495, 998 P.2d 560, 562 (quoting
 
 Sheriff v. Smith,
 
 91 Nev. 729, 734, 542 P.2d 440, 443 (1975));
 
 see also Cutter Aviation v. Dept. of Revenue,
 
 958 P.2d 1, 9 (Ariz. Ct. App. 1997) (“While subsequent legislation clarifying a statute is not necessarily controlling on a court, it is strongly indicative of the legislature’s original intent.”);
 
 accord Police Pension Board of City of Phoenix v. Warren,
 
 398 P.2d 892, 896 (Ariz. 1965) (recognizing that “an amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act” (internal quotations omitted));
 
 Ferrell v. Department of Transportation,
 
 435 S.E.2d 309, 315 (N.C. 1993); Norman J. Singer, 2B
 
 Sutherland Statutory Construction
 
 § 49:11 (6th ed. 2000).
 

 [53]
 

 2007 Nev. Stat., ch. 520, § 10.3, at 3143-44. As a result of 2007 amendments, NRS 287.023(4)’s subsidy requirement now also applies to retirees who join PEBP or reinstate PEBP coverage after retiring, indicating that the subsidy applies broadly to all PEBP participants.
 
 See
 
 2007 Nev. Stat., ch. 496, § 2, at 2868-69, and ch. 520, § 10.3, at 3143-44.
 

 [54]
 

 See 2007 Nev. Stat., ch. 520, §§ 10.3, 18, at 3143-44, 3149.
 

 [55]
 

 PEBP’s executive officer, who participated in legislative committee hearings and was personally involved in drafting S.B. 547, averred that § 10.3 of that bill (amending NRS 287.023(4)) was enacted specifically to counter Metro’s refusal to pay the subsidy for pre-October 2003 retirees.
 
 See also
 
 Minutes of the Legis. Commission’s Comm, to Study the Public Employees’ Benefits Program, 73d Leg. Interim (Nev., March 16, 2006) (indicating that the committee was aware of a legal opinion, apparently provided to PEBP and the Clark County School District, discussing Legislative Counsel Bureau and Attorney General opinions on this issue, but concluding that the subsidy was not required for retirees who were previously covered by collectively bargained-for health trusts or who retired before October 2003, for the reasons alleged by Metro and Clark County).
 

 [56]
 

 Hearing on S.B. 547 Before the Assembly Ways and Means Comm., 74th Leg. (Nev., June 3, 2007).
 

 [57]
 

 2007 Nev. Stat., ch. 520, §§ 10.3, 18, at 3143-44, 3149.