135 Nev., Advance Opinion 48

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ARTEMIS EXPLORATION COMPANY, A NEVADA CORPORATION; HAROLD WYATT; AND MARY WYATT,
Appellants,
vs.
RUBY LAKE ESTATES HOMEOWNER'S ASSOCIATION,
Respondent.

No. 75323

**FILED**

OCT 03 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK



Appeal from a final judgment in a real property action. Fourth Judicial District Court, Elko County; Alvin R. Kacin, Judge.

*Affirmed.*

Gerber Law Offices, LLP, and Travis W. Gerber and Zachary A. Gerber, Elko,
for Appellants.

Leach Kern Gruchow Anderson Song and Karen M. Ayarbe, Reno,
for Respondent.

BEFORE PICKERING, PARRAGUIRRE and CADISH, JJ.

*OPINION*

By the Court, CADISH, J.:

In 1991, the Nevada Legislature adopted the Uniform Common-Interest Ownership Act, as codified in NRS Chapter 116. *See* 1991 Nev.

19-41012

Stat., ch. 245, §§ 1-128, at 535-79; NRS 116.001. NRS Chapter 116 defines what constitutes a "common-interest community," see NRS 116.021, and also authorizes the creation of a "unit-owners' association" to govern the common-interest community, see NRS 116.011; NRS 116.3101. As relevant to this appeal, a unit-owners' association is authorized to impose assessments on unit owners for the unit owners' association to maintain "common elements," which, generally speaking, comprise real estate within the common-interest community that is owned by the unit-owners' association but that benefits all unit owners. See NRS 116.017.

Appellants own property in Ruby Lake Estates (RLE), a neighborhood which was created in 1989. In the underlying declaratory relief action, they challenged respondent Ruby Lake Estates Homeowner's Association's (RLEHOA) authority to impose assessments on them. In particular, appellants argued that RLE was not a validly created "common-interest community" because the recorded Declaration that created RLE did not expressly state that RLE's residents would be responsible for paying assessments for the maintenance of common elements or other real estate aside from their individual units, which appellants contend is required under NRS 116.021. Alternatively, appellants contended that RLEHOA was not a validly created "unit-owners' association" because it was not organized until 2006, while NRS 116.3101 requires a unit-owners' association to be created before the first lot in the common-interest community is conveyed. The district court granted summary judgment for RLEHOA, thereby affirming RLEHOA's authority to impose assessments on appellants.

We agree with the district court's determination that RLEHOA is authorized to impose assessments. First, we conclude that RLE is a common-interest community within the meaning of NRS 116.021 because RLE's Declaration contained an implied payment obligation for the common elements and other real estate that appellants had notice of by virtue of the Declaration when they purchased their lots. Second, we conclude that NRS 116.3101(1) does not apply to common-interest communities formed before 1992 and that, consequently, RLEHOA did not need to be organized before the first lot in RLE was conveyed.

*FACTS AND PROCEDURAL HISTORY*

RLE is a rural subdivision in Elko County, Nevada. Developers Stephen and Mavis Wright (the Wrights) filed an official Plat Map for the community on September 15, 1989. The first sheet of the Plat Map reads in relevant part:

> At a regularly held meeting at the Board of Commissioners of Elko County, State of Nevada, held on the 5th day of July 1989, this Plat was approved as a Final Plat pursuant to NRS 278.380. *The Board does hereby reject on behalf of the public all streets or roadways for maintenance purposes and does hereby accept all streets and easements therein offered for utility, drainage, and access purposes only as dedicated for public use.*

(Emphasis added.)

Subsequently, the Wrights recorded the Declaration for the community on October 25, 1989.[1] As relevant here, the Declaration provided this:

---

[1]NRS 116.037 defines "Declaration" as "any instruments, however denominated, that create a common-interest community, including any amendments to those instruments." The term is frequently used

SUPREME COURT
OF
NEVADA

(O) 1947A

> The real property affected hereby is subjected to the imposition of the covenants, conditions, restrictions and reservations specified herein to *provide for the development and maintenance of an aesthetically pleasing and harmonious community* of residential dwellings for the purpose of preserving a high quality of use and appearance and maintaining the value of each and every lot and parcel of said property.

(Emphasis added.) The Declaration further provided for the creation of an Architectural Review Committee (ARC)

> for the general purpose of providing for the maintenance of a *high standard of architectural design, color and landscaping harmony* and to preserve and enhance aesthetic qualities and *high standards of construction in the development and maintenance of the subdivision.*

(Emphases added.) The Plat Map was also attached to the recorded Declaration.

On December 15, 1989, the first lots in RLE were conveyed. Appellant Artemis Exploration Company acquired two lots in RLE, one in 1994 and one in 2010. Elizabeth Essington was the sole officer and director for Artemis Exploration Company. Mrs. Essington and her husband built their residential home on one of the lots Artemis Exploration Company owned in RLE. Appellants Harold and Mary Wyatt took title to a lot in RLE in 2001.

---

interchangeably with "Covenants, Conditions & Restrictions," or "CC&Rs." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon,* 133 Nev. 740, 753, 405 P.3d 641, 651 (2017).

From 1997, after the last lot was sold by the developer, until 2006, an informal Ruby Lake Estates Landowners Association existed, and regularly levied and collected assessments from lot owners within RLE to maintain the roadways, fences, culverts, cattle guards, and entrance sign, and perform weed abatement within the community. Mr. Essington prepared a draft letter dated August 22, 2005, to the RLE lot owners, which he sent to Mr. Lee Perks as President of the Landowners Association to review. In the letter, Mr. Essington wrote of "the need to revitalize the Ruby Lakes Estates property owners association," which could include "assur[ing] the aesthetic qualities of the subdivision" and "periodic road maintenance." He specifically wrote that he was "appealing to all of the property owners to take the time and interest now to help to revitalize the association and assist in making it function as it was intended," specifically seeking to organize the election of association officers.

RLEHOA was officially formed as an association in early 2006, 17 years after the first lot was conveyed. At an RLEHOA meeting held August 12, 2006, Mr. Essington seconded the motion to approve the bylaws for RLEHOA, which included a provision for annual assessments on the property owners for "maintenance, roads, fire protection, and other expenditures." On August 11, 2007, Mr. Essington was elected to the Board of the RLEHOA, and he submitted a Declaration of Certification as a Common-Interest Community Board Member to the Nevada Real Estate Division certifying that he had read and understood "the governing documents of the association and the provisions of Chapter 116 of Nevada Revised Statutes (NRS) and the Nevada Administrative Code (NAC)." As a member of the Board, Mr. Essington voted to levy assessments, and the Essingtons paid imposed assessments on behalf of Artemis.

Several years after RLEHOA was created, there was a dispute between Mrs. Essington and RLEHOA's ARC regarding the construction of a building in the subdivision. Over Mrs. Essington's objections, the RLEHOA Board and the ARC took the position that the structure was permitted. Thereafter, in response to the Board and the ARC's decision, Mrs. Essington stopped paying assessments on behalf of Artemis Exploration Company. Artemis Exploration Company then filed the underlying declaratory relief action against RLEHOA challenging RLEHOA's authority to impose assessments.[2]

The parties filed competing motions for summary judgment. The district court denied Artemis Exploration Company's motion and granted RLEHOA's motion. In particular, the district court found that RLE was a common-interest community because its Declaration sufficiently described RLE's common elements and alerted unit owners that they would be financially responsible for maintaining those elements. The district court also found that even though RLEHOA was not organized before conveyance of the first lot as required by NRS 116.3101, RLEHOA was nevertheless a validly created unit-owners' association because NRS 116.3101 should not apply retroactively. Following additional motion practice not relevant to this appeal, the district court entered a final judgment consistent with its summary judgment determinations.[3]

---

[2]The parties initially participated in non-binding arbitration before the Nevada Real Estate Division. After the arbitrator ruled in RLEHOA's favor, Artemis Exploration Company instituted the underlying action.

[3]This case was initiated by Artemis Exploration Company against RLEHOA. After the district court granted summary judgment in favor of RLEHOA and against Artemis, the court ordered all other property owners within RLE to be joined. Other than the Wyatts and Artemis, all property

SUPREME COURT
OF
NEVADA

(O) 1947A

## DISCUSSION

A district court's decision to grant summary judgment is reviewed de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005); *see also Costello v. Casler*, 127 Nev. 436, 439, 254 P.3d 631, 634 (2011). The district court's judgment in this case does not implicate any disputed facts, but instead raises issues of statutory construction, which we also review de novo. *Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. 855, 857, 265 P.3d 688, 690 (2011).

Appellants argue that the district court erred when it determined RLE was a common-interest community as defined under NRS 116.021 because RLE's Declaration includes neither a description of common elements, nor an obligation to pay for common elements. Alternatively, appellants argue that RLEHOA is not a valid unit-owners' association because it was not created before the first conveyance in RLE, thus violating NRS 116.3101(1). We disagree with these arguments and conclude that the district court properly found that (1) RLE is a common-interest community pursuant to NRS 116.021, and (2) NRS 116.3101(1) does not apply retroactively, such that RLEHOA is a validly created unit-owners' association.

---

owners failed to respond and defaults were entered against them. The Wyatts stipulated and agreed to be bound by the court's Order Granting RLEHOA's Motion for Summary Judgment and its Order Denying Artemis's Motion for Summary Judgment and any appeals related thereto.

SUPREME COURT
OF
NEVADA

(O) 1947A

*RLEHOA is a common-interest community pursuant to NRS 116.021 because RLE's Declaration sufficiently gave notice to prospective unit owners that they would be financially liable for maintaining common elements*

Our inquiry into whether RLE's Declaration meets NRS 116.021's definition of "common-interest community" begins with that statute's relevant language, which provides,

> "Common-interest community" means **real estate** *described in a declaration with respect to which a person, by virtue of the person's ownership of a unit, is obligated to pay for a share of* real estate taxes, insurance premiums, maintenance or improvement of, or services or other *expenses related to,* **common elements,** *other units* **or other real estate** described in that declaration.

NRS 116.021(1) (emphases added). Thus, the definition of "common-interest community" depends on the definitions of "common elements" and "real estate." NRS 116.017 defines "common elements" in relevant part as "any real estate within a planned community which is owned or leased by the association." And NRS 116.081 defines "real estate" as

> any leasehold or other estate or interest in, over or under land, including structures, fixtures and other improvements and interests that by custom, usage or law pass with a conveyance of land though not described in the contract of sale or instrument of conveyance. The term includes parcels with or without upper or lower boundaries and spaces that may be filled with air or water.

Reading the definitions together, we conclude that to qualify as a "common-interest community," the community's Declaration must describe "real estate" for which unit owners are financially responsible, which may include "structures, fixtures and other improvements and interests that by custom, usage or law pass with a conveyance of land though not described in the contract of sale or instrument of conveyance." Commonly, this would be real

SUPREME COURT
OF
NEVADA

(O) 1947A

estate that is "owned or leased by the association," i.e., "common elements," but not necessarily, as it could be "other real estate" described in a declaration.

While the definition of "common-interest community" is unwieldy, we conclude that RLE falls within that definition. As indicated, RLE's Declaration provided "for the development and maintenance of an aesthetically pleasing and harmonious community," and it established the ARC, whose responsibilities were to "maint[ain] . . . a high standard of architectural design, color and landscaping harmony and to preserve and enhance aesthetic qualities and high standards of construction in the development and maintenance of the subdivision." Even if these provisions could plausibly be interpreted as ensuring that each individual unit owner maintained only their own unit (a proposition with which we disagree), that interpretation is belied by the Plat Map, which was attached to the Declaration, and wherein the Elko County Board of Commissioners expressly "reject[ed] on behalf of the public all streets or roadways for maintenance purposes" but nevertheless "accept[ed] all streets and easements therein offered for utility, drainage, and access purposes only as dedicated for public use." The Plat Map also shows street monuments within the community. Reading the Declaration and Plat Map in conjunction, we conclude that the Declaration sufficiently describes "structures, fixtures and other improvements" (i.e., "real estate" under NRS 116.081) that, by virtue of the County Board disavowing any maintenance responsibility, necessarily implies that unit owners will be responsible for such maintenance.

Our conclusion is reinforced by NRS 116.2105, which provides an extensive list of information a declaration must contain but, conspicuously, does not require a declaration to expressly explain that unit owners may be subject to assessments or otherwise be financially responsible for maintaining common elements, and we do not read NRS 116.021 as imposing such a requirement. Indeed, the Restatement (Third) of Property (Servitudes) § 6.2 (2000), provides support for this conclusion. It states,

> There may be an implied obligation to contribute to the maintenance of commonly held property without regard to usage. An implied obligation may also be found where the declaration expressly creates an association for the purpose of managing common property or enforcing use restrictions and design controls, but fails to include a mechanism for providing the funds necessary to carry out its functions.

Restatement (Third) of Property (Servitudes) § 6.2 cmt. a (2000). Consequently, we conclude that while RLE's Declaration does not expressly state an obligation to pay for common elements, other units, or real estate pursuant to NRS 116.021, the Plat Map (which is part of the Declaration pursuant to NRS 116.2109) does describe such real estate, giving rise to an implied payment obligation. *See, e.g., Evergreen Highlands Ass'n v. West,* 73 P.3d 1, 7 (Colo. 2003) (adopting the approach taken by a number of other states and the Restatement of Property (Servitudes) in holding that under Colorado's version of the Uniform Common-Interest Ownership Act, language in a declaration, plat, and other recorded documents may establish a common-interest community by implication with the association's concomitant implied authority to levy assessments on unit owners to pay for maintenance of the subdivision's common elements).

Therefore, the district court was correct when it found that RLE met the statutory requirements of NRS 116.021, making it a common-interest community.[4]

*RLEHOA is a valid unit-owners' association even though it was organized after RLE conveyed the first lot because NRS 116.3101(1) does not apply to pre-1992 common-interest communities*

Appellants next contend that even if RLE is a valid common-interest community under NRS 116.021, RLEHOA is not a valid unit-owners' association because it was not organized in compliance with NRS 116.3101. That statute provides that "[a] unit-owners' association must be organized no later than the date the first unit in the common-interest community is conveyed." NRS 116.3101(1). According to appellants, because RLE conveyed the first unit in 1989 and RLEHOA was not formally organized until 2006, RLEHOA necessarily failed to comply with NRS 116.3101.

Appellants argue that the Legislature intended NRS 116.3101(1) to apply to pre-1992 common-interest communities because it did not include this provision in a list of provisions from which pre-1992 common-interest communities are exempt.[5] Further, they argue, if the

---

[4]The language of NRS 116.021 quoted in the text is the current version following amendments adopted in 2009. While the parties dispute whether the broader pre-2009 version or this one applies here, we hold that RLE is a common-interest community under either version. The current language requires the declaration to describe the "real estate" but does not require it to specify the payment obligation. This is even clearer in this case because the provisions of NRS 116.2105 specifying the required contents of a declaration do not apply to pre-1992 communities like this one. NRS 116.1201(3)(b).

[5]When the Uniform Common-Interest Ownership Act was first adopted in 1991 as NRS Chapter 116, *see* 1991 Nev. Stat., ch. 245, §§ 1-2,

---

provision does not apply, any community in the State formed before 1992 with a declaration could organize an HOA at any time, even if the declaration provides no notice to the lot owners. On the other hand, RLEHOA's position is that if NRS 116.3101(1) applies here, it leads to the absurd result that pre-1992 communities were required to comply with a statute which did not exist when they were created. We agree with RLEHOA's position.

In the context of deciding a statute's retroactive application, this court has stated that

> [i]n Nevada, as in other jurisdictions, statutes operate prospectively, unless the Legislature clearly manifests an intent to apply the statute retroactively, or it clearly, strongly, and imperatively appears from the act itself that the Legislature's intent cannot be implemented in any other fashion.

*PEBP v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 154, 179 P.3d 542, 553 (internal quotation marks omitted).

Here, appellants have not pointed to any legislative history or other authority, nor have we found any, to indicate "clearly, strongly, and imperatively" that the Legislature intended for NRS 116.3101(1) to apply to pre-1992 communities. While the Uniform Common-Interest Ownership Act commentary for this provision states that creating an HOA before the first lot is conveyed is important for notice purposes, the RLE Plat Map and

---

at 535, NRS Chapter 116 did not apply at all to pre-1992 communities. It was not until 1999 that such communities were made subject to this Act, *see* 1999 Nev. Stat., ch. 572, § 16.5, at 2999, but certain exceptions were adopted at that time, including the provision of NRS 116.1201(3)(b) stating that pre-1992 common-interest communities do not have to comply with NRS 116.2101 to NRS 116.2122. 1999 Nev. Stat., ch. 572, § 16, at 2998-99.

Declaration, which were recorded together when the community was created, notified potential buyers that the community intended to maintain common elements for a variety of reasons. Moreover, appellants and other unit owners could not have relied on a yet-to-be enacted statute in deciding whether to purchase lots and build homes in the community. *Cf. PEBP*, 124 Nev. at 155, 179 P.3d at 554 (observing that fair notice, along with reasonable reliance and settled expectations, are guiding principles in deciding whether a statute applies retroactively).

While the Legislature did not state its intention as to whether NRS 116.3101(1) applies to pre-1992 communities, it did state that "[NRS Chapter 116] must be applied and construed so as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." NRS 116.1109(2). The legislative history leading to the 1999 amendments to NRS Chapter 116 shows that the legislative purpose was to include more common-interest communities within the scope of the uniform law in order to protect a greater number of homeowners, because many pre-1992 communities that were previously excluded from NRS Chapter 116 had been "mismanaged with loosely written codes covenants and restrictions." *See* Hearing on S.B. 451 Before the Assembly Comm. on Judiciary, 70th Leg. (Nev., May 14, 1999) (Statement of Senator Schneider, who worked on developing the bill). In that regard, it would be absurd for the Legislature to decide in 1999 to impose NRS Chapter 116's requirements on pre-1992 communities but only if they knew, before 1992, that they would later be required to formally create the unit-owners' association before selling the first unit. *See S. Nev. Homebuilders Ass'n v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173



(2005) (observing that in resolving statutory construction issues, this court's duty is to select a construction that is consistent with the Legislature's intent and the purpose of the legislation as a whole and that also avoids absurd or unreasonable results). Therefore, we conclude that the district court properly found that NRS 116.3101(1) does not apply to a pre-1992 community. Accordingly, we affirm.

_____, J.
Cadish

We concur:

_____, J.
Pickering

_____, J.
Parraguirre