MGM MIRAGE, a Delaware Corporation; and STEEL ENGI-
NEERS, INC., a Nevada Corporation, Appellants, v.
NEVADA INSURANCE GUARANTY ASSOCIATION, a
Nonprofit Unincorporated Nevada Entity, Respondent.

No. 49445

June 25, 2009 209 P.3d 766

*Kurth Law Office* and *Robert O. Kurth, Jr.*, Las Vegas, for
Appellant Steel Engineers.

*S. Denise McCurry*, Las Vegas; *Sandra Douglass Morgan*, Las
Vegas, for Appellant MGM Mirage.

*Hutchison & Steffen, LLC*, and *Michael K. Wall* and *James H.
Randall*, Las Vegas, for Respondent.

*Catherine Cortez Masto*, Attorney General, *Shane Chesney*, Sen-
ior Deputy Attorney General, and *Joanna N. Grigoriev*, Deputy At-
torney General, Carson City, for Amicus Curiae Nevada State In-
surance Commissioner.

*Lemons, Grundy & Eisenberg* and *Alice Campos Mercado*,
Reno, for Amicus Curiae Property Casualty Insurers Association of
America.

*Scarpello & Huss, Ltd.*, and *Mark R. Forsberg*, Carson City, for
Amicus Curiae Carson City.

# OPINION

By the Court, HARDESTY, C.J.:

In this appeal we must determine whether appellants, as self-insured employers under Nevada's Workers' Compensation Act, can seek reimbursement from the Nevada Insurance Guaranty Association (NIGA) for amounts that should have been paid by appellants' insolvent excess insurance carrier. Because we determine that appellants are not insurers for purposes of the Nevada Insurance Guaranty Association Act (NIGA Act), we conclude that self-insured employers under the Workers' Compensation Act, like MGM Mirage (MGM) and Steel Engineers, Inc. (SEI), are not barred from recovering payment from NIGA for their covered workers' compensation claims payable by their insolvent excess insurance carrier.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants MGM and SEI are both employers in the State of Nevada who operate as self-insured employers, as defined under Nevada's workers' compensation laws. In accordance with the re-

quirements set forth in the Workers' Compensation Act, MGM and SEI obtained excess workers' compensation insurance policies. Both employers contracted with Reliance National Insurance Company (Reliance) for their excess policies. The policies, entitled "Specific Excess Workers' Compensation and Employers' Liability Policy," declare that MGM and SEI are "insured[s]" and Reliance is their insurer.

In October 2001, the Commonwealth Court of Pennsylvania declared Reliance Insurance Company, including Reliance, insolvent and entered an order of liquidation. MGM and SEI were required to pay workers' compensation funds to employees whose claims were pending at the time Reliance became insolvent. As a result of Reliance's insolvency, pursuant to NRS 687A.060, NIGA became responsible for claims that were covered under the Reliance policies and the NIGA Act.[2] In order to recover the expended funds, MGM and SEI requested reimbursement from NIGA.

NIGA concedes that it is responsible for paying insolvent insurers', like Reliance's, unpaid Nevada claims that are within NRS 687A.033's definition of "covered claims." It further agrees that MGM and SEI could have recovered payment for some or all of the expended workers' compensation funds based on both entities' excess insurance policies with Reliance had Reliance remained solvent. However, NIGA refused to pay the claims because it was uncertain as to whether MGM and SEI fell within the NIGA Act's definition of "insurer," which would place their claims outside the scope of "covered claims" under the NIGA Act, specifically NRS 687A.033(2)(a), and prohibit NIGA from paying the claims.

Because NIGA was uncertain about its statutory obligations towards MGM and SEI, NIGA filed a complaint in district court, seeking a declaration of the meaning of the term "insurer" under the NIGA Act. The district court granted summary judgment in favor of NIGA.

---

[2]NRS 687A.060(1) provides, in pertinent part:

The Association:

(a) Is obligated to the extent of the *covered claims* existing before the determination of insolvency and arising within 30 days after the determination of insolvency, or before the expiration date of the policy if that date is less than 30 days after the determination, or before the insured replaces the policy or on request cancels the policy if he does so within 30 days after the determination . . . .

. . . .

(b) Shall be deemed the insurer to the extent of its obligations on the *covered claims* and to that extent has any rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent. The rights include, without limitation, the right to seek and obtain any recoverable salvage and to subrogate a covered claim, to the extent that the Association has paid its obligation under the claim.

(Emphases added.)

In its order, the district court concluded that summary judgment was appropriate because there were no factual disputes and the sole issue presented was one of statutory construction. The court determined that the definition of "insurer" under NRS 616A.270 of the Workers' Compensation Act—which includes self-insured employers—must be read consistently with the NIGA Act. Because MGM's and SEI's claims were based on funds paid to employees as workers' compensation, the court determined that the Workers' Compensation Act's definition of "insurer" was applicable to the NIGA Act. And, because MGM and SEI did not dispute the fact that they were self-insured employers under the workers' compensation laws, and therefore, that they were insurers under the Workers' Compensation Act, the court concluded that MGM and SEI were insurers under the NIGA Act. As a result, the court held that MGM and SEI were precluded from seeking reimbursement from NIGA. MGM and SEI appeal.

## DISCUSSION

On appeal, MGM and SEI argue that their claims are recoverable, maintaining that self-insured employers' excess workers' compensation claims fall within the NIGA Act's definition of "covered claim" because they do not engage in the business of insurance, although they are self-insured employers under workers' compensation laws.

NIGA, on the other hand, argues that the NIGA Act prohibits it from paying MGM's and SEI's claims because MGM and SEI are considered insurers under the Workers' Compensation Act, as they are self-insured employers. Because MGM and SEI are insurers under Nevada's workers' compensation laws, and the Workers' Compensation Act and the NIGA Act are connected, NIGA contends, MGM and SEI are likewise insurers under the NIGA Act.

In resolving this appeal, we will address whether a self-insured employer, as defined in the Workers' Compensation Act, qualifies as an insurer for purposes of the NIGA Act, thus precluding recovery from the NIGA fund.

*Standard of review*

" 'Summary judgment is . . . appropriate [only] when no genuine issues of material fact [exist] and the moving party is entitled to judgment as a matter of law.' " *Stalk v. Mushkin*, 125 Nev. 21, 24-25, 199 P.3d 838, 840 (2009) (alterations in original) (quoting *Clark v. Robinson*, 113 Nev. 949, 950, 944 P.2d 788, 789 (1997)). The parties do not dispute the material facts of this case. Instead, they dispute the district court's legal conclusions regarding the construction of NRS 687A.033(2)(a). The construction of a statute is a question of law, which we review de novo. *In re Application*

*of Shin*, 125 Nev. 100, 102, 206 P.3d 91, 92 (2009). Because the single issue presented in this appeal is whether MGM and SEI, as self-insured employers, are deemed insurers for purposes of the NIGA Act—a legal question of statutory interpretation—this court's review of the district court's grant of summary judgment is plenary. *See id.*

*Nevada's Insurance Guaranty Association Act and the Association*

In 1971, following the majority of other jurisdictions, the Legislature created an insurance guaranty act entitled the Nevada Insurance Guaranty Association Act (NIGA Act). 1971 Nev. Stat., ch. 661, § 21, at 1943; NRS 687A.010. The NIGA Act was codified at NRS Chapter 687A. 1971 Nev. Stat., ch. 661, § 21, at 1943. The purpose of the NIGA Act is to provide limited protection for insureds in the event that their insurers become insolvent. NRS 687A.060. The NIGA Act applies to all direct insurance (with exception to certain insurance that is not pertinent to this appeal). *See* NRS 687A.020.

The NIGA Act created the Nevada Insurance Guaranty Association (NIGA). *See* NRS 687A.040. NIGA is a nonprofit, unincorporated, legal entity that provides insurance benefits to individuals and entities whose insurers have become insolvent. *See* NRS 687A.040; NRS 687A.060. NIGA's duty is to accept responsibility for obligations existent at the time that an insurance company loses its solvency, meaning NIGA steps into the shoes of the insolvent insurer, as NIGA ''[s]hall be deemed the insurer to the extent of its obligations on the *covered claims* and to that extent has any rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.'' NRS 687A.060(1)(b) (emphasis added). ''Covered claims'' are unpaid claims that are within the coverage of a policy written by a now insolvent insurance company. NRS 687A.033(1). While the statute defining ''[c]overed claims'' generally provides that covered claims are those that are within the policy coverage, the statute specifically prescribes what types of claims are not covered, which, therefore, fall outside the purview of NIGA's duty to pay. Specifically, NRS 687A.033(2) excludes from coverage, in relevant part, ''[a]n amount that is directly or indirectly due a[n] . . . insurer.'' NRS 687A.033(2)(a). The NIGA Act does not define ''insurer.''

NIGA's general fund, from which it pays claims, is supplied by annual assessments of each insurer that is a member of NIGA. *See* NRS 687A.060; S.B. 74, Bill Summary, 70th Leg. (Nev. 1999). In order to transact business within Nevada, all insurers must be members of NIGA and must contribute to the fund. NRS 687A.040; NRS 687A.070(2). The NIGA Act defines these members as per-

sons or entities that "[w]rite[ ] any kind of insurance" and are "licensed to transact insurance in this state." NRS 687A.037(1), (2).

*Nevada's Workers' Compensation Act*

Prior to 1980, the Nevada Industrial Commission was the sole provider of workers' compensation insurance in Nevada. Legislative Counsel Bureau, *Leg. Comm. on Workers' Compensation*, Bulletin No. 01-19 at 5, 71st Leg. (Nev., 2001). But, in 1979, recognizing that some employers could fund compensation benefits by themselves, the Legislature allowed employers to opt out of the state industrial insurance system and remain personally liable for the claims of their injured employees. *Id.*; *see generally* NRS Chapter 616B. Thus, the Legislature permitted those qualified employers to "self-insure." *Id.*; NRS 616B.300. As self-insurers, these employers are exempt from the statutory requirement that employers purchase workers' compensation insurance. *See generally* NRS 616B.300.

However, in order to qualify as a "self-insured employer," the employer must be certified by the Commissioner of Insurance, which requires the employer to prove that it is financially capable of assuming the responsibility to pay the claims of its injured workers. NRS 616A.305; *see also* NRS 616B.300(1). Additionally, the self-insured employer must obtain excess insurance in order to "provide protection against a catastrophic loss." NRS 616B.300(5). The excess insurance policy protects the self-insured employer when the specific or total losses in a policy year exceed its deductible. 23 Eric Mills Holmes, *Appleman on Insurance* § 145.1, at 4 (2d ed., interim vol., 2003) (stating that "excess coverage" is a second layer of insurance coverage that is generally "triggered on the exhaustion of the limits of the primary policy"). The Workers' Compensation Act defines "insurer" as including self-insured employers. NRS 616A.270(1).

*Statutory interpretation of NRS 687A.033(2)(a)*

NIGA argues that because MGM and SEI qualify as self-insured employers and, therefore, insurers under workers' compensation laws, MGM and SEI are insurers for purposes of the NIGA Act and cannot recover from NIGA. The issue of whether self-insured employers constitute insurers for NIGA Act purposes is an issue of first impression and requires this court to engage in statutory interpretation.

This court has established that when it is presented with an issue of statutory interpretation, it should give effect to the statute's plain meaning. *Public Employees' Benefits Prog. v. LVMPD*, 124 Nev. 138, 147, 179 P.3d 542, 548 (2008). Thus, when the language of a

statute is plain and unambiguous, such that it is capable of only one meaning, this court should not construe that statute otherwise. *Nevada Power Co. v. Public Serv. Comm'n*, 102 Nev. 1, 4, 711 P.2d 867, 869 (1986). However, if following the statute's apparent plain meaning results in a meaning that runs counter to the "spirit" of the statute, this court may look outside the statute's language. *Public Employees' Benefits Prog.*, 124 Nev. at 147, 179 P.3d at 548; *see also Universal Electric v. Labor Comm'r*, 109 Nev. 127, 131, 847 P.2d 1372, 1374 (1993) (stating that this court will "adhere to the rule of statutory construction that the intent of a statute will prevail over the literal sense of its words").

MGM and SEI argue that a plain reading of the NIGA Act demonstrates that neither employer is an insurer and that NIGA is obligated to pay their claims as a result. In response, NIGA asserts that the term "insurer," as used in the NIGA Act, is ambiguous and therefore requires this court to look outside the statutory scheme. It argues that because both the NIGA Act and the Workers' Compensation Act are inextricably intertwined, they must be read in conjunction with each other. Therefore, because the Workers' Compensation Act defines "insurer" to include self-insured employers, then, according to NIGA, self-insured employers are insurers under the NIGA Act as well.

*Plain meaning of "insurer" under NRS 687A.033(2)(a)*

Despite the fact that NRS 687A.033(2)(a) of the NIGA Act excludes coverage for claims that are "due an . . . insurer," the Legislature did not define "insurer" in the NIGA Act. Rather, the NIGA Act defines "[i]nsolvent insurer," which includes the circumstances in which an insurer is to be considered insolvent so that its obligations will be met by the association, and "member insurer," which describes the type of insurer that is required to be a member of NIGA. NRS 687A.035; NRS 687A.037. We are not persuaded that either of these definitions are instructive in this case because NRS 687A.033(2)(a) specifically uses the term "insurer" rather than "insolvent insurer" or "member insurer." Nevertheless, we determine that the term "insurer" has a plain meaning and that MGM and SEI do not fall within a reasonable connotation of the term.

We determine that various statutory definitions of "insurer" throughout other chapters of the insurance title are instructive.[3] For example, the general provisions governing the insurance title

---

[3]NRS Chapters 679A through 697 comprise the Nevada Insurance Code (Title 57). *See* NRS 679A.010. The NIGA Act falls within this title and the general provisions governing Title 57 are contained in NRS Chapter 679A.

defines "insurer" as "every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance." NRS 679A.100. Because this definition is included in the general provisions governing Title 57, which includes the NIGA Act, we conclude that NRS 679A.100's definition of "insurer" applies to the NIGA Act.

In response to this general statutory definition of "insurer," NIGA argues that it is not authoritative because the Legislature used the word "includes" before ascribing NRS 679A.100 its definition—*i.e.*, " 'Insurer' *includes* every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance." NRS 679A.100 (emphasis added). Based on this, NIGA claims that NRS 679A.100 does not define "insurer," but that it is a list of insurers that is not all-inclusive. While NIGA is correct in its assertion that the term "includes" generally indicates something that is a part of the whole, *Merriam-Webster's Collegiate Dictionary* 629-30 (11th ed. 2007) (defining "include" as "to take in or comprise as a part of a whole or group" and that it "suggests the containment of something as a constituent, component, or subordinate part of a larger whole"), and that NRS 679A.100's definition may not be "all inclusive," we determine that several other statutes falling within Title 57 further demonstrate that "insurer" has the commonplace meaning that the Legislature prescribed in NRS 679A.100.

Other statutes in the insurance title define "insurer" as one that engages in the business of insurance, like NRS 679A.100. For example, NRS 692C.070 and NRS 696B.120 define "insurer" the same as NRS 679A.100, which includes "every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance."[4] Additionally, NRS 679B.540 and NRS 695H.040 provide that an "insurer" is "any insurer . . . authorized pursuant to this title to conduct business in this state." Moreover, NRS 686B.1759 and NRS 695A.014 also define "insurer" as any person or entity that is engaged in the insurance business.[5] Although NRS 679A.100 employs the term "includes" when prefacing its definition of "insurer," which indicates that the definition is not all-inclusive, we find it indicative of the meaning

[4]Specifically, NRS 692C.070 provides, in pertinent part, " 'Insurer' has the meaning ascribed in NRS 679A.100." In addition, NRS 696B.120 provides the following definition: " 'Insurer,' in addition to persons so defined under NRS 679A.100, includes also persons purporting to be insurers, or organizing or holding themselves out as organizing in this state for the purpose of becoming insurers."

[5]NRS 686B.1759 defines "Insurer" as "any private carrier authorized to provide industrial insurance in this state." Similarly, NRS 695A.014 provides, " 'Insurer' includes every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance."

of "insurer" under the NIGA Act, which we conclude excludes self-insured employers since they do not engage in the business of insurance.

Further, we note that self-insured employers are not defined as "insurers" anywhere in Nevada's insurance title. The only definition of "insurer" that includes self-insured employers is found in Nevada's Workers' Compensation Act under NRS 616A.270. Nevada's workers' compensation laws are located in a separate title, not the insurance title. *Compare* NRS Title 57 (which includes the NIGA Act (NRS Chapters 679A through 697)), *with* NRS Title 53 (which includes the Workers' Compensation Act, which, under NRS 616A.005, is technically referred to as the Nevada Industrial Insurance Act (NRS Chapters 616A through 616D)). Thus, we conclude that the Legislature's substantial use of "insurer" to describe persons or entities in the business of insurance militates in favor of concluding that the NIGA Act's reference to "insurer" plainly addresses an insurance company.[6]

Nevertheless, NIGA suggests that MGM and SEI are insurers even under the plain meaning of the term, arguing that, although they do not underwrite insurance policies as insurance companies do, as self-insured employers, they still insure the risk of their employees like insurance companies. We disagree.

Traditionally, the party who is the insurer obligates itself to become responsible for loss or damage for consideration in the form of premium payments from the insured. *See, e.g., Black's Law Dictionary* 814 (8th ed. 2004) (defining "insurance" as "[a] contract by which one party (the *insurer*) undertakes to indemnify another party (the *insured*) against risk of loss, damage, or liability arising from the occurrence of some specified contingency" and that "[a]n insured party usu[ally] pays a premium to the insurer in exchange for the insurer's assumption of the insured's risk").

Here, although MGM and SEI are obligated to their employees to the extent that they must pay their employees' workers' compensation claims, the claims at issue in this case fall within MGM's and SEI's excess insurance policy with Reliance. MGM and SEI had in-

---

[6]Our conclusion that the plain meaning of the term "insurer" refers to an insurance company or a person engaged in the insurance business reflects the common lay and legal understanding of the term. *See, e.g., Merriam-Webster's Collegiate Dictionary* 649, 1365 (11th ed. 2007) (defining "insurer" as "one that insures," especially as an insurance "underwriter," which is "one that underwrites a policy of insurance" and "set[s] one's name to (an insurance policy) for the purpose of thereby becoming answerable for a designated loss or damage on consideration of receiving a premium percent"); *Black's Law Dictionary* 823 (8th ed. 2004) (defining "insurer" as "[o]ne who agrees, by contract, to assume the risk of another's loss and to compensate for that loss. — Also termed *underwriter*"); *A Dictionary of Modern Legal Usage* 457, 898 (2d ed. 1995) (defining "insurer" to mean an underwriter and defining "underwriter" as "one that insures a risk").

surance policies with Reliance where, in consideration for premiums paid, Reliance agreed to assume the risk of MGM's and SEI's employees' workers' compensation claims that reached an excess beyond the limits that they contractually agreed to. It was Reliance who paid into the NIGA Act fund as a member-insurer. Therefore, we conclude that Reliance, not MGM or SEI, was insuring the employees' risk of loss for those excess insurance claims. Consequently, the plain meaning of "insurer," as applied to the NIGA Act, must exclude MGM and SEI because they are not in the business of insurance.

This conclusion is consistent with other jurisdictions' interpretations of statutes similar to NRS 687A.033(2)(a). Although every state has statutorily created insurance guaranty acts and associations, only a few states have considered the precise issue of whether self-insured employers are insurers under their Insurance Guaranty Association Acts. Notably, however, the majority of those states that have considered the issue hold that self-insurers are not insurers for Insurance Guaranty Association Act purposes. *See, e.g., Doucette v. Pomes*, 724 A.2d 481, 489-91 (Conn. 1999) (holding that in light of the plain meaning of "insurance" and "insurer," and the insurance title's definition of "insurance," a self-insured employer under the workers' compensation laws was not an insurer for purposes of the guaranty act); *Stamp v. Dept. of Labor and Industries*, 859 P.2d 597, 599-601 (Wash. 1993) (deciding to follow other jurisdictions' interpretations of "insurer" in concluding that self-insured employers "are not reinsurers, insurers, insurance pools or underwriting associations"); *In re Mission Ins. Co.*, 816 P.2d 502, 505 (N.M. 1991) (holding that self-insured employers' claims are "covered claims" under the guaranty act because the excess insurance policies at issue were direct insurance and not reinsurance); *Iowa Cont. Wkrs' Comp. v. Iowa Ins. Guar.*, 437 N.W.2d 909, 913-16 (Iowa 1989) (concluding that the self-insurer's excess workers' compensation insurance was direct insurance, rather than reinsurance, because the only insurance contract at issue was between the insolvent insurer and the group, as "the insurer's relationship is with the employer or the group of employers, and not with the individual employees"); *Zinke-Smith, Inc. v. Florida Insurance Guar. Ass'n, Inc.*, 304 So. 2d 507, 509 (Fla. Dist. Ct. App. 1974) (holding that, under the insurance title's definition of "insurer," self-insured employers are not insurers for guaranty act purposes as such insurance policies are not reinsurance, but rather, excess insurance).

Moreover, our conclusion that self-insured employers are not insurers under the NIGA Act is in harmony with Nevada's workers' compensation laws. As the term "insurer" is used in the NIGA Act, it is addressing an insurance company, which is evidenced by the

purpose of the NIGA Act—to cover claims of insolvent insurance companies. NRS 687A.060 limits NIGA's obligation to pay certain covered claims; however, NIGA's obligation with respect to workers' compensation claims is not limited, as the statute requires NIGA to pay "[t]he entire amount of the claim." NRS 687A.060(1)(a)(1). Applying the Workers' Compensation Act's definition of "insurer" to the NIGA Act would run counter to NRS 687A.060(1)(a)(1), as the NIGA Act obligates NIGA to pay workers' compensation claims in full and NIGA's obligation would be excused if the claimant was a self-insured employer. Such a reading is contrary to the purpose of the NIGA Act.

Therefore, we join the majority of jurisdictions and hold that self-insured employers under Nevada's workers' compensation laws are not insurers for purposes of the NIGA Act. Consequently, we conclude that MGM's and SEI's claims that are "[c]overed claim[s]," as defined in NRS 687A.033(1), are recoverable.

### CONCLUSION

We hold that, because the plain meaning of "insurer" necessarily denotes a person or entity that is in the insurance business, self-insured employers are not insurers under the NIGA Act. We therefore determine that appellants, as self-insured employers, may recover payment from NIGA for their workers' compensation claims that are "[c]overed claims." This conclusion is supported by a majority of jurisdictions' interpretations of their guaranty acts and is in harmony with Nevada's workers' compensation laws. Thus, we reverse the district court's order and remand this matter to the district court for further proceedings consistent with this opinion. ·

PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, and GIBBONS, JJ., and POLAHA, D.J., concur.