141 Nev., Advance Opinion 3

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| PROTECTIVE INSURANCE COMPANY, Appellant, vs. THE STATE OF NEVADA COMMISSIONER OF INSURANCE; AND SCOTT KIPPER, IN HIS OFFICIAL CAPACITY AS STATUTORY RECEIVER FOR DELINQUENT DOMESTIC INSURER, Respondents. | No. 87074 |



FILED

JAN 16 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order affirming a receiver's claim-priority determination on liquidation of an insolvent insurer under NRS Chapter 696B. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Affirmed.*

Hall & Evans and Kurt R. Bonds, Las Vegas; Eckert Seamans Cherin & Mellot, LLC, and Michael A. Montgomery, Richmond, Virginia,
for Appellant.

Greenberg Traurig, LLP, and Mark E. Ferrario, Kara B. Hendricks, Elliot T. Anderson, and Jerrell L. Berrios, Las Vegas,
for Respondents.

25-02330

BEFORE THE SUPREME COURT, STIGLICH, PICKERING, and PARRAGUIRRE, JJ.

*OPINION*

By the Court, PICKERING, J.:

When an insurance company becomes insolvent, that company's remaining assets may not cover all outstanding claims against it. To fairly apportion the insolvent company's assets, NRS 696B.420 prioritizes certain claims and claimants over others. The highest nonadministrative priority classification, NRS 696B.420(1)(b), includes claims by and against policyholders of the insolvent insurance company and claims by specific statutory insurance guaranty associations. The question in this case is whether this high-priority classification includes a private insurance company's subrogation claim, too.

Appellant Protective Insurance Company paid uninsured/underinsured motorist (UM/UIM) benefits to its insured after the tortfeasor's liability insurer became insolvent. Protective insists that its claim—a subrogation claim arising out of its payment of UM/UIM benefits—falls within the high-priority classification of NRS 696B.420(1)(b). Respondent, the Nevada Insurance Commissioner, who is acting as the failed insurance company's receiver, urges this court to affirm the district court's decision that NRS 696B.420(1)(b) excludes Protective's claim, placing the claim within the lower-priority residual category, NRS 696B.420(1)(g).

We hold that NRS 696B.420(1)(b) excludes a private insurance company's subrogation claim. Nevada subrogation law, the statute's text, and public policy all require that NRS 696B.420(1)(b) exclude such claims. We therefore affirm the district court's determination that the Insurance

Commissioner properly relegated Protective's claim to NRS 696B.420(1)(g), the residual category.

I.

The parties do not dispute the facts in this case. In 2016, Daniel Zeljkovich was driving a tractor trailer and collided with Donald Matthews. Each had automobile liability insurance coverage: Zeljkovich through Spirit Commercial Auto Risk Retention Group, and Matthews through Protective Insurance Company. In 2018, Matthews sued Zeljkovich in Virginia, where the crash occurred, for negligence.

Spirit, which is domiciled in Nevada, began defending Zeljkovich and negotiated a $700,000 settlement with Matthews. Before the parties could finalize that settlement, Spirit became insolvent, and the Eighth Judicial District Court in Clark County, Nevada, placed Spirit into receivership and liquidation. With Spirit insolvent and Zeljkovich now considered uninsured, Matthews sought UM/UIM benefits from his own insurer, Protective. Eventually, Protective settled, paying Matthews $700,000. In turn, Protective asserts it acquired subrogation rights from Matthews against Spirit's estate.

Claimants to an insolvent insurer's estate are subject to a mandatory process in which a receiver caps and prioritizes claims against the insurer's limited remaining assets according to the priority schedule in NRS 696B.420(1). Protective therefore filed a claim with Spirit's Special Deputy Receiver. The Special Deputy Receiver thereafter notified Protective that its claim would fall within the residual prioritization category, NRS 696B.420(1)(g), and, because of insufficient funds, could go unpaid. Protective objected to this determination, arguing that its claim should fall within subsection (b) of the NRS 696B.420(1) priority schedule.

Judicial review followed, as provided by NRS 696B.330. After notice and a hearing, the district court affirmed the Special Deputy Receiver's decision. Protective appeals, arguing that the district court erred in upholding the Special Deputy Receiver's decision to exclude Protective's claim from NRS 696B.420(1)(b).

II.

A.

Whether NRS 696B.420(1)(b) includes a private insurer's subrogation claims is a question of statutory interpretation we consider de novo. *See State Farm Mut. Auto. Ins. Co. v. Comm'r of Ins.*, 114 Nev. 535, 539, 958 P.2d 733, 735 (1998). In interpreting a statute, "[o]ur analysis begins and ends with the statutory text if it is clear and unambiguous." *Blackburn v. State*, 129 Nev. 92, 95, 294 P.3d 422, 425 (2013). If a statute's text is "plain and unambiguous, such that it is capable of only one meaning, this court should not construe that statute otherwise." *MGM Mirage v. Nev. Ins. Guar. Ass'n*, 125 Nev. 223, 228-29, 209 P.3d 766, 769 (2009). But when a statute's language is ambiguous, "meaning it is susceptible to two or more reasonable interpretations, the court may look to extrinsic aids such as legislative history [and] extra-jurisdictional authority" to resolve the ambiguity. *Coleman v. State*, 134 Nev. 218, 219, 416 P.3d 238, 240 (2018).

B.

NRS 696B.420 prioritizes the distribution of "claims from the estate" of an insolvent insurer in liquidation by dividing those claims into different classes. "Each claim in each class must be paid in full or adequate money retained for the payment before the members of the next class receive any payment." NRS 696B.420(1).

At issue here is NRS 696B.420(1)(b). After payment of administrative costs, subsection (b) grants the highest priority to:

*All claims under policies, any claims against an insured for liability for bodily injury or for injury to or destruction of tangible property which are covered claims under policies*, including any such claims of the Federal Government or any state or local government, and any claims of the Nevada Insurance Guaranty Association, the Nevada Life and Health Insurance Guaranty Association and other similar statutory organizations in other jurisdictions. Any claims under life insurance and annuity policies, whether for death proceeds, annuity proceeds or investment values, must be treated as loss claims. *That portion of any loss for which indemnification is provided by other benefits or advantages recovered or recoverable by the claimant may not be included in this class*, other than benefits or advantages recovered or recoverable in discharge of familial obligations of support or because of succession at death or as proceeds of life insurance, or as gratuities. No payment made by an employer to an employee of the employer may be treated as a gratuity.

NRS 696B.420(1)(b) (emphases added).

The first sentence of NRS 696B.420(1)(b) broadly grants priority to (1) "[a]ll claims under policies" issued by the insolvent insurer, (2) covered claims for bodily injury or property damage against a policyholder of the insolvent insurer, and (3) "any claims" of Nevada's two statutory insurance guaranty associations, the Nevada Insurance Guaranty Association (NVIGA) and the Nevada Life and Health Insurance Guaranty Association (NLHIGA), "and other similar statutory organizations in other jurisdictions." But NRS 696B.420(1)'s third sentence creates a carve-out for claims otherwise within the subsection (b) priority, stating "[t]hat portion of any loss for which indemnification is provided by other

SUPREME COURT
OF
NEVADA

(O) 1947A

5

benefits . . . recovered or recoverable may not be included in this [priority b] class." *See id.*

Subparagraphs (c) through (f) of NRS 696B.420(1) create other priority classes for other kinds of claims, not applicable here. "Any other claims not falling [in these] other classes" fall within subsection (g), the residual classification, the lowest level of priority. NRS 696B.420(1)(g).

## C.

### 1.

Neither subrogation principles nor the statute's text support Protective's argument that the UM/UIM benefits it paid its insured fall within the subsection (b) priority under NRS 696B.420(1). Subrogation rights arise "when one party has been compelled to satisfy an obligation that is ultimately determined to be the obligation of another." *AT & T Techs., Inc. v. Reid*, 109 Nev. 592, 595-96, 855 P.2d 533, 535 (1993). Importantly, the subrogee acquires no greater rights than the subrogor. *See Houston v. Bank of Am. Fed. Sav. Bank*, 119 Nev. 485, 488, 78 P.3d 71, 73 (2003) (describing how the subrogee assumes the same position as the subrogor), *distinguished on other grounds by In re Fontainebleau Las Vegas Holdings*, 128 Nev. 556, 569, 289 P.3d 1199, 1207 (2012). By "plac[ing] the subrogee in the precise position of the one whose rights are subrogated," a subrogee remains "subject to the limitations, burdens, and disqualifications" applicable to the original claim of the subrogor. 73 Am. Jur. 2d *Subrogation* § 60.

An insurer like Protective, as subrogee, cannot obtain greater rights from its insured, the subrogor, than that subrogor possessed. Reading NRS 696B.420(1)(b) to include a UM/UIM insurer's subrogation claim would conflict both with subrogation law and the plain text of the

 

carve-out provision in subsection (b). Start with the underlying claim: By its terms, NRS 696B.420(1)(b)'s carve-out applies, taking the claim outside subsection (b), whenever the underlying claimant, the subrogor, is provided indemnification "by other benefits . . . recovered or recoverable by the claimant." Protective paid Matthews UM/UIM benefits. Thus, Matthews, as subrogor, "recovered" indemnification for his loss from Protective, which the carve-out in NRS 696B.420(1)(b) says "may not be included in this class." Expressly excluded from subsection (b), those claims then fall to the residual prioritization classification, subsection (g). An insurer-subrogee has no greater rights than the subrogor's existing rights—and nothing more. By NRS 696B.420(1)'s plain text and consistent with fundamental subrogation law principles, the subrogation claim Protective acquired is a subsection (g) claim. This is all Matthews, the underlying claimant, possessed.

Protective's argument that its claim should fall within subsection (b) because it has not itself received any indemnification would give the subrogee more rights than the subrogor. Indeed, Protective implicitly acknowledged it has no more rights than the subrogor when it admitted in its reply brief that any defenses that would apply to Matthew's claim would apply to its own, noting that "as a subrogation claim, Protective's claim is subject to the same defenses on the merits." Thus, because subsection (b) excludes from that class any loss for which indemnification is provided to the claimant, and Protective has indemnified the underlying claimant who in turn would be excluded from that class, it follows that subsection (b) must exclude Protective's subrogation claim, too.

Protective argues that, because the statute includes some statutory guaranty associations' subrogation claims, it must then include UM/UIM private insurer subrogation claims. The opposite is true.

NRS 696B.420(1)(b) expressly includes "any claims" by Nevada's statutory guaranty organizations, NVIGA and NLHIGA. Naming the NVIGA and NLHIGA alongside "other similar statutory organizations in other jurisdictions," the statute's text envisages that these organizations may have a broader set of claims that fall within subsection (b) than a private UM/UIM insurer like Protective does.

The first two clauses in subsection (b)'s first sentence enumerate two kinds of claims that fall within its coverage: first-party "claims under policies" and third-party "claims against an insured for liability for bodily injury [or property damage] which are covered claims under policies." Continuing, this sentence allows "any such claims" by governments. "Such" is a restrictive word; it refers to the first- and third-party liability claims the first two clauses reference and limits the claims the identified governments can bring to those two preceding categories of claims. But in the very next clause, the statute then gives subsection (b) priority to "any claims" by NVIGA, NLHIGA, or other similar statutory organizations from other jurisdictions. The use of "any" unmodified by the restricting word "such" implies that NVIGA, NLHIGA, and similar statutory organizations from outside Nevada have a broader set of claims eligible for subsection (b) priority, presumably including subrogation claims, than other claimants do.

If subsection (b) gave the same priority to claims by private insurers as it does to statutory guaranty associations, the clause allowing

"any" claims by statutory guaranty associations would be surplusage. *See Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007) (stating that "statutory interpretation should not render any part of a statute meaningless"). Protective's argument that, because subrogation claims by NVIGA and NLHIGA qualify for priority under subsection (b), its subrogation claims do too, therefore fails.

3.

Further confirming our reading of NRS 696B.420(1), at least one other state has interpreted similar statutory language and reached the same result. The Pennsylvania Supreme Court, in *Ario v. Reliance Insurance Co.*, examined whether a similar statutory scheme, 40 Pa. Cons. Stat. § 221.44, places an insurance company's subrogation claim within subcategory (b) priority or subcategory (g) priority. 980 A.2d 588, 593-94 (Pa. 2009). Similar to NRS 696B.420(b), the Pennsylvania statute provides:

> All claims under policies for losses wherever incurred, including third[-]party claims, and all claims against the insurer for liability for bodily injury or for injury to or destruction of tangible property which are not under policies, shall have the next priority. All claims under life insurance and annuity policies, whether for death proceeds, annuity proceeds, or investment values shall be treated as loss claims. *That portion of any loss, indemnification for which is provided by other benefits or advantages recovered by the claimant, shall not be included in this class*, other than benefits or advantages recovered or recoverable in discharge of familial obligations of support or by way of succession at death or as proceeds of life insurance, or as gratuities. No payment made by an employer to his employee shall be treated as a gratuity.

40 Pa. Cons. Stat. § 221.44(b) (emphasis added).

SUPREME COURT
OF
NEVADA

(O) 1947A

In *Ario*, the Pennsylvania Supreme Court determined that the indemnification exception applied to a private insurance company's subrogation claim. *Id.* at 595-96. Although Pennsylvania receivers had historically placed such claims within the residual priority (g) classification, *id.* at 595-97, in *Ario*, Pennsylvania's insurance commissioner challenged a receiver's aberrational decision to place the subrogation claim within the higher subsection (b) classification, *id.* at 592. The court first looked to the underlying claim against the liquidated insurance company's estate, that of the injured third party—who the court referred to as the "true" claimant—against the liquidated insurer's insured. *Id.* at 596. Because that injured third party received indemnification from her own insurer, her claim fell within the carve-out to subsection (b). *Id.* The court then looked to the principle of Pennsylvania law that "a subrogee has no greater rights than those held by the subrogor" to determine that the insurance company that indemnified the injured third party could not have acquired a higher-priority claim than she had. *Id.* (quoting *Bell v. Slezak*, 812 A.2d 566, 574 (Pa. 2002)). That the insurance company had not itself received indemnification was immaterial; the insurer simply stepped into the shoes of the underlying claimant, the injured third party. *Id.*

This Pennsylvania case is persuasive. First, the language of the Pennsylvania statute is substantially similar to NRS 696B.420(1)(b). Both statutes include a nearly identically worded indemnification carve-out. *Compare* NRS 696B.420(1)(b) ("That portion of any loss for which indemnification is provided by other benefits or advantages recovered or recoverable by the claimant may not be included in this class."), *with* 40 Pa. Cons. Stat. § 221.44(b) ("That portion of any loss, indemnification for which

SUPREME COURT
OF
NEVADA

(O) 1947A

10

is provided by other benefits or advantages recovered by the claimant, shall not be included in this class.").[1]

Although Protective attempts to distinguish the Nevada statute based on its inclusion of some subrogation claims (those of NVIGA and similar entities), an inclusion the Pennsylvania statute does not share, this distinction fails. As already discussed, Protective misreads the clause in the Nevada statute related to NVIGA as providing rights to private insurers that it does not.

Protective's additional attempt to distinguish *Ario* by pointing to language in Pennsylvania's statute qualifying "claims under policies *for losses*" also fails. Prior to its 2003 amendments, NRS 696B.420(1)(b) was even more similar to the Pennsylvania statute than it is today, including the same "losses" language the Pennsylvania statute contains, and nothing in the current statute suggests the change to remove that language substantively affected the statute's meaning. 2003 Nev. Stat., ch. 495, § 82 at 3334. Regardless, that language was only relevant to the Pennsylvania court's opinion on the nature of the injured third party's claim—whether the subrogation right arose from a settlement or from a policy—and does not impact *Ario*'s application here. 980 A.2d at 595-96.

---

[1]Although the parties did not brief the issue, the Nevada statute's carve-out includes the words "or recoverable," which the Pennsylvania statute does not. Arguably, this means that since Matthews had benefits that were "recoverable," he may not have fallen within subsection (b) priority even before Protective paid him under his UM/UIM policy. This would make policy sense, for if Matthews could recover elsewhere, the Nevada statute would then prioritize the claims of those who have no alternative route for recovery. We do not, however, reach or decide that issue. Instead, we note that because Nevada law may be even less receptive of Protective's and Matthew's claims than Pennsylvania law, this Pennsylvania case is even more persuasive.

Moreover, the Pennsylvania statute originated from model legislation drafted by the National Association of Insurance Commissioners (NAIC). *See id.* at 603 (Saylor, J.; concurring). The NAIC's model acts likewise inspired much of NRS Chapter 696B. *See* NRS 696B.280. Indeed, NRS 696B.280(3) instructs Nevada courts, in interpreting NRS Chapter 696B, to

> effectuate the general purpose to make uniform the laws of those states which enact the Uniform Insurers Liquidation Act or the Insurer Receivership Model Act. To the extent that the provisions of the NAIC Acts, when applicable, conflict with other provisions of this Code, the provisions of the NAIC Acts shall control.

Looking to *Ario* as persuasive authority accords with NRS 686B.280(1), for a decision from Nevada echoing *Ario*'s result would make Nevada and Pennsylvania law uniform on this issue.

### 4.

Public policy likewise confirms that NRS 696B.420(1) relegates Protective's subrogation claim to subsection (g). When an insurer goes under, the claims against that insurer's assets may well prove insufficient to cover all claims against that insurer. For some claimants, an inability to recover may mean a loss of one's home or ruinous liability. For others, it may mean a shortage of money to deal with an emergency, to pay medical bills, or to purchase other necessities. NRS 696B.420 does the tough job of triaging these competing claims, prioritizing those who most immediately and urgently need the funds their insurer promised them, since not everyone who is deserving can be paid.

Because policyholders and the persons they injure are often least able to absorb a loss, the statute prioritizes policyholders and persons suffering personal injury or property damage at the hands of the insolvent

SUPREME COURT
OF
NEVADA

(O) 1947A

12

insurer's policyholders over other creditors during liquidation proceedings. NRS 696B.420(1)(b). Similarly, since NVIGA and NLHIGA exist to protect insurance policyholders if their insurers become insolvent, the statute also prioritizes these statutory insurance guaranty associations. NLHIGA, for example, exists to "protect . . . against failure in the performance of contractual obligations under life insurance, health insurance and annuity policies." NRS 686C.020; see NRS 686C.130. When an insurance company fails, those statutory insurance guaranty organizations then pay the policyholders of the failed company. See, e.g., NRS 687A.090. For these organizations to fulfill their insurance consumer protection duties, they must remain financially solvent themselves.

Protective contends that it too—a private insurance company— should count among these high-priority claimants. Protective recognizes that NRS 696B.420 is a consumer protection statute. Attempting to squirm into subsection (b) priority, Protective asserts that, under Virginia law, if it cannot recover from the failed insurer, it can then recover from the failed insurer's insured, subverting the policy of protecting insurance consumers. In effect, Protective urges that Nevada law should protect consumers by allowing Protective to recover as a high-priority subsection (b) claimant so it does not need to sue (and thereby harm) those consumers itself.

But private insurers with subrogation claims are not among the class of litigants the statute seeks to protect. Companies like Protective are not vulnerable insurance consumers; they are insurance suppliers. Indeed, an insurer that provides UM/UIM benefits covers the risk that Matthews faced here—bodily injury and property damage due to the negligence of an effectively uninsured or underinsured motorist. Allowing private insurance companies to recover at the same priority level as the policyholders of the

insolvent insurance company would risk severely decreasing the amount those policyholders could recover under the statute, harming consumers. Contrary to Protective's assertions, this would not make policy sense.

Further, Protective's alleged policy-conflict scenario is illusory. To protect consumers from private insurance companies like Protective, Nevada law does not allow the kind of lawsuits Protective threatens against its insured to proceed in any circumstances. NRS 687A.095 flat-out bars insurers from suing to recover from any insured whose insurance companies have become insolvent. While Protective urges that such actions may be permissible under Virginia law, that argument is too speculative to warrant further consideration here, where Protective did not raise this point below and its appellate argument addressing this law is threadbare. *See, e.g.*, *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (this court need not consider issues not adequately briefed, not supported by relevant authority, and not cogently argued); *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

### III.

NRS 696B.420(1) does not give class (b) priority to the payment by Protective of UM/UIM benefits to its insured. Rather, Protective's claim properly falls into subsection (g), the residual category. Our reading of NRS 696B.420 comports with subrogation principles, harmonizes with the statute's plain meaning, and reserves limited funds for vulnerable insurance policyholders. It also accords with how Pennsylvania has interpreted its similar priority statute, contributing to nationwide

consistency for insurers, policyholders, and other insurance company creditors. We therefore affirm the district court's decision.

_____, J.
Pickering

We concur:

_____, J.
Stiglich

_____ J.
Parraguirre