141 Nev., Advance Opinion 50

# IN THE SUPREME COURT OF THE STATE OF NEVADA

|  |  |
|---|---|
| AMAZON.COM SERVICES, LLC, Appellant, vs. DWIGHT MALLOY, Respondent. | No. 89314 |

**FILED**

OCT 30 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Certified question of law from the United States District Court for the District of Nevada regarding an unsettled question of state law as to whether Nevada incorporates the Federal Portal-to-Portal Act into its wage-hour statutes. United States District Court for the District of Nevada; Anne R. Traum, District Judge.

*Question answered.*

Gibson, Dunn & Crutcher LLP and Jason C. Schwartz and Andrew G.I. Kilberg, Washington D.C., Megan Cooney, Irvine, California, and Bradley J. Hamburger, Los Angeles, California; Littler Mendelson, P.C., and Montgomery Y. Paek and Amy Thompson, Las Vegas,
for Appellant.

Thierman Buck and Joshua D. Buck and Leah L. Jones, Reno; Hodges & Foty, LLP, and Don J. Foty, Houston, Texas; Rodriguez Law Offices, P.C., and Esther C. Rodriguez, Las Vegas,
for Respondent.

Gabroy Messer Law Offices and Christian Gabroy, Henderson,
for Amicus Curiae Nevada Justice Association.

25-47354

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, PARRAGUIRRE, J.:

The United States District Court for the District of Nevada certified the following question to this court: "Does Nevada law incorporate the PPA [Portal-to-Portal Act]?" Preliminarily, because the certified question encompasses provisions of the PPA that are not at issue in this litigation, we narrow the scope of the question to whether Nevada's wage-hour laws incorporate the exceptions to compensable "work" that are laid out in the PPA. After a thorough review of NRS Chapter 608 and accompanying authorities, we conclude that the Nevada Legislature did not intend to incorporate the PPA's exceptions to compensable work activities into its wage-hour laws, and accordingly, we answer the certified question, as reframed, in the negative.

*FACTS AND PROCEDURAL HISTORY*

Nevada resident Dwight Malloy worked for Amazon during the height of the COVID-19 pandemic, between August 2020 and April 2021. After and in accordance with general emergency orders from Nevada's Governor and Nevada's Occupational Safety & Health Administration (NOSHA), Amazon instituted a company-wide policy that required employees to undergo COVID-19 testing before each shift, consistent with NOSHA's recommendations. Amazon did not pay its employees for the time spent undergoing testing.

---

[1]The Honorable Michael L. Douglas, Senior Justice, was appointed to participate in this matter in place of the Honorable Patricia Lee, Justice.

Malloy filed a putative class action in the United States District Court for the District of Nevada, asserting four claims for relief under Nevada's wage-hour statutes. Malloy alleged that Amazon (1) failed to compensate each hour worked in violation of NRS 608.016, (2) failed to pay minimum wages for each hour worked in violation of the Nevada Constitution, (3) failed to pay the overtime rate for hours worked in violation of NRS 608.018, and (4) failed to timely pay all wages upon termination in violation of NRS 608.020-.050.

Amazon moved to dismiss the case, arguing that COVID-19 testing is not compensable "work" under the PPA. The district court denied the motion to dismiss, holding that Nevada law had not incorporated the PPA, and therefore, the COVID-19 pre-shift screenings constituted work that required compensation. Amazon then moved to certify for appeal the denial of the motion under 28 U.S.C. § 1292(b) or, in the alternative, to certify three questions of law to the Nevada Supreme Court. The district court granted the motion in part, finding the underlying question partially dispositive of the case and not previously answered by the appellate courts in this state: "Does Nevada law incorporate the PPA?"

## DISCUSSION

*We elect to rephrase the certified question*

"We have discretion under NRAP 5 to answer questions of Nevada law certified to us by federal courts when no controlling authority exists on those questions of law and they involve 'determinative' matters of the case before the certifying court." *Mack v. Williams*, 138 Nev. 854, 856, 522 P.3d 434, 440 (2022) (quoting NRAP 5). This court is confined to answering "questions of law of this state which *may be determinative of the cause then pending* in the certifying court." NRAP 5(a) (emphasis added). We have construed this phrasing to mean that we must answer certified

SUPREME COURT
OF
NEVADA

(O) 1947A

questions that address actual controversies in the underlying case to avoid direct conflict with constitutional demands of issuing nonadvisory opinions. *See Echeverria v. State*, 137 Nev. 486, 489, 495 P.3d 471, 474-75 (2021). We thus "retain[ ] the discretion to rephrase the certified question[ ] as we deem necessary." *Id.* at 488-89, 495 P.3d at 474.

In reviewing the certified question submitted by the federal district court, we believe the question, as phrased, is too broad for us to answer without issuing an advisory opinion. Since only a portion of the PPA is actually at issue (the exceptions to "work"), it would be improper for us to address the entirety of the PPA's inclusion into Nevada law. Still, the underlying litigation contains a partially dispositive issue that turns on whether Nevada's wage-hour laws contemplate the exceptions to compensable work provided by the PPA. Accordingly, we rephrase the question as: "Do Nevada's wage-hour laws incorporate the PPA's exceptions to compensable work?"

*Nevada does not incorporate the PPA's exceptions to compensable work*

"A certified question under NRAP 5 presents a pure question of law, which this court answers de novo." *Echeverria*, 137 Nev. at 488, 495 P.3d at 474. Although the parties quarrel over the term "work" as written in Nevada's wage-hour statutes, our task is aimed at analyzing Nevada's statutory scheme under NRS Chapter 608 to answer the pointed question of whether the legislature intended to incorporate the PPA's exceptions to compensable work.

When interpreting a statute, our objective is to effectuate the legislature's intent. *Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 1168, 14 P.3d 511, 513 (2000). We begin by assessing the statute's plain language. *Webb v. Shull*, 128 Nev. 85, 88-89, 270 P.3d 1266, 1268 (2012). If a statute's text is "plain and unambiguous, such that it is capable of only one meaning,

SUPREME COURT
OF
NEVADA

(O) 1947A

this court should not construe that statute otherwise." *MGM Mirage v. Nev. Ins. Guar. Ass'n*, 125 Nev. 223, 228-29, 209 P.3d 766, 769 (2009). A statute may be deemed ambiguous, however, when its "meaning . . . is susceptible to two or more reasonable interpretations." *Protective Ins. v. State, Comm'r of Ins.*, 141 Nev., Adv. Op. 3, 562 P.3d 215, 217 (2025) (quoting *Coleman v. State*, 134 Nev. 218, 219, 416 P.3d 238, 240 (2018)).

Nevada's wage-hour laws generally mirror the Federal Labor Standards Act (FLSA). *See Terry v. Sapphire Gentlemen's Club*, 130 Nev. 879, 884, 336 P.3d 951, 955 (2014). And we have repeatedly recognized that

> [w]hen a federal statute is adopted in a statute of this state, a presumption arises that the legislature knew and intended to adopt the construction placed on the federal statute by federal courts. This rule of [statutory] construction is applicable, however, only if the state and federal acts are substantially similar and the state statute does not reflect a contrary legislative intent.

*State, Dep't of Bus. & Indus. v. Granite Constr. Co.*, 118 Nev. 83, 88, 40 P.3d 423, 426 (2002) (quoting *Sharifi v. Young Bros., Inc.*, 835 S.W.2d 221, 223 (Tex. App. 1992)). Even where the language differs between the federal and state statutes, when the substance of the statutes run parallel, the federal counterpart should be relied upon unless there is language that is "materially different" or "language [from] the relevant statutes [is] *entirely* conflicting." *Terry*, 130 Nev. at 884-85, 336 P.3d at 955-56 (emphasis added) (internal quotation marks omitted). Because Nevada's wage-hour laws coexist with federal counterparts that govern the same area of law, we turn to the FLSA, the PPA, and Nevada's wage-hour statutes to determine the extent to which they parallel one another.

The FLSA was enacted in 1938 to provide workplace protection for wage-hour employees. 29 U.S.C. §§ 201, 202. Relevant to this litigation,

the FLSA provides two provisions that address minimum-wage rates and maximum hours worked. The minimum-wage provision provides, in relevant part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates . . . .

29 U.S.C. § 206(a). The provision regarding maximum hours worked provides, in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). As the United States Supreme Court recognized, Congress did not define the term "work" when it enacted the FLSA. *Tennessee Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944). Thus, the Court interpreted the term broadly to mean "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* Congress later passed the PPA to amend certain provisions of the FLSA, providing in relevant part exceptions to certain activities that otherwise would be entitled to compensation under the Court's "work" definition. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005).

Supreme Court
OF
Nevada

(O) 1947A

The PPA excludes the following activities from compensation:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are *preliminary to or postliminary* to said principal activity or activities,

> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a) (emphasis added). More succinctly, the PPA aims at excluding compensation for travel as well as preliminary and postliminary activity that is not principal activity. The Supreme Court later reviewed the effect of the PPA and concluded the amendment did not affect its previous definition of the term "work." *IBP, Inc.*, 546 U.S. at 28. Notably, the Department of Labor agreed that "[t]he Portal-to-Portal Act did not change the [work] rule except to provide an exception for preliminary and postliminary activities." 29 C.F.R. § 785.7.

Turning to Nevada's wage-hour statutes, employers must pay employees wages for each hour worked (except for narrow exceptions where compensation is not required). The only relevant statutory language reads "[e]xcept as otherwise provided in NRS 608.0195 and 608.215, an employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period." NRS 608.016. Nevada's administrative regulations further provide that "[a]n employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." NAC 608.115. Relevant portions of NRS 608.018 provide

SUPREME COURT
OF
NEVADA

(O) 1947A

7

that "[a]n employer shall pay 1½ times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1½ times the minimum rate set forth in NRS 608.250 works . . . [m]ore than 40 hours in any scheduled week of work." The Nevada Constitution provides that "[e]xcept as otherwise provided in this section, . . . each employer shall pay a wage to each employee of not less than twelve dollars ($12) per hour worked." Nev. Const. art. 15, § 16(1).

With the FLSA, the PPA, and Nevada's wage-hour statutes in mind, we turn to the parties' arguments to discern the extent to which they parallel. The crux of Amazon's argument is that the PPA's exceptions to compensable work must be incorporated into Nevada's law since Nevada has modeled its wage-hour laws after the FLSA, as amended by the PPA. Amazon elaborates that to the extent this court is inclined to deviate from the FLSA on this issue, caselaw requires a clear indication from the legislature that departure is warranted. Malloy counters that deviation from the FLSA is warranted here because the PPA and Nevada law materially differ in that they contain different exceptions to compensable work, and Nevada generally has not chosen to broadly exclude activities from compensation as the PPA does.

Nevada does indeed have work-compensation exceptions under NRS 608.0195 and NRS 608.215 that closely mirror work-compensation exceptions contemplated by the FLSA under 29 C.F.R. § 785.22 and 29 U.S.C. § 213(b)(21). In fact, in past unpublished decisions we have acknowledged that Nevada's wage-hour statutes closely mirror the FLSA and have deferred to FLSA caselaw to construe the term "work." *Rite of Passage v. State, Dep't of Bus. & Indus.*, No. 66388, 2015 WL 9484735, at *1 (Nev. Dec. 23, 2015) (Order of Affirmance) (turning to the FLSA for guidance on interpreting the term "work" because "Nevada law provides

little guidance on this issue"); *see Csomos v. Venetian Casino Resort, LLC*, No. 55913, 2012 WL 642460, at *3 (Nev. Feb. 24, 2012) (Order of Affirmance) (recognizing the Nevada Legislature intended for its wage-hour laws to track federal laws). But Amazon's argument focuses primarily on the FLSA and fails to illustrate where Nevada's wage-hour laws reflect the PPA's amendments to the FLSA. At this juncture, we reiterate our "willingness to part ways with the FLSA where the language of Nevada's statutes has so required." *Terry*, 130 Nev. at 885, 336 P.3d at 956.

In this case, we hold that Nevada's exceptions to work compensation are materially different from the PPA provisions at issue and signal sufficient reason to depart from FLSA guidance. The PPA provides a catchall type of exception that allows for potential work to go without compensation, whereas the Nevada statutes do not contain that express language. Nevada's law contemplates only narrow exceptions to compensable work activity. *See* NRS 608.0195 (allowing employer/employee agreements that except wage compensation for sleep periods during a 24-hour shift); NRS 608.215 (allowing domestic service employees who reside in their workplace to agree to except wage compensation for sleep and meal periods). The PPA provides a blanket provision for work to go without compensation, whereas Nevada's narrow exceptions provide *more* protection for its workers by identifying specific instances where work does not have to be compensated.[2] The plain language of NRS Chapter 608 does not evince legislative intent to mirror the PPA, and the PPA's broad exceptions do not correspond with the narrow

---

[2]This conclusion runs consistent with our previous observation in *Terry* that, "to avoid preemption, our state's minimum wage laws may only be equal to or more protective than the FLSA." 130 Nev. at 886, 336 P.3d at 956.

and specific exceptions Nevada provides. We therefore believe the Nevada Legislature signaled express departure from the PPA by omitting any language in Nevada's wage-hour statutes that mirrors the PPA exceptions' language.

Since our conclusion is based on a plain-language reading of Nevada's wage-hour laws, turning to legislative history is not necessary; but we do so anyway to address some of Amazon's arguments. Amazon highlights several instances where the Nevada Attorney General and the Nevada Labor Commissioner recognized the legislature's intent of mirroring the FLSA. Amazon also highlights that the FLSA and PPA were enacted decades before Nevada passed its relevant wage-hour statutes, indicating that the Nevada Legislature was aware of the FLSA and PPA and, therefore, passed its wage-hour statutes with an intent to mirror the federal understanding of compensable and noncompensable work.

Notwithstanding the clear indication by the legislature that it did not intend to incorporate the PPA exceptions under a plain-language reading of NRS Chapter 608, the fact that the legislature amended its wage-hour laws to better align with the FLSA on multiple occasions but did not include any language consistent with the PPA is telling. No amendments to Nevada's wage-hour statutes provide language that mirrors the PPA or even refers to the PPA to indicate an intent to incorporate the amendment. Looking to the plain language and legislative history surrounding NRS Chapter 608, we are convinced that the Nevada Legislature did not intend to incorporate the broad exceptions to compensable work under the PPA.

## CONCLUSION

A plain-language reading of NRS Chapter 608 indicates the Nevada Legislature did not adopt the broad work-compensation exceptions from the PPA. Legislative history bolsters that conclusion. We thus answer

SUPREME COURT
OF
NEVADA

(O) 1947A

the certified question, as rephrased, in the negative: No, Nevada did not incorporate the PPA into its wage-hour laws.

_____, J.
Parraguirre

We concur:

_____, C.J.
Herndon

_____, J.
Pickering

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

_____, Sr. J.
Douglas

SUPREME COURT
OF
NEVADA

(O) 1947A

11